Martin DIAZ–ZALDIERNA, Petitioner,

v.

Adele FASANO, District Director San Diego District, United States Immigration and Naturalization Service, Respondent.

No. 99–CV–286 BTM (JAH).

United States District Court, S.D. California.

March 16, 1999.

Carolyn Chapman, Attorney at Law, Coronado, CA, for petitioner.

Charles G. LaBella, United States Attorney, Samuel W. Bettwy (argued), Special Assistant United States Attorney, San Diego, CA, for respondent.

## ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

MOSKOWITZ, District Judge.

Petitioner, a deportable legal permanent resident alien, has filed a petition for writ of habeas corpus under 28 U.S.C. § 2241. Petitioner challenges the constitutionality of the Attorney General's lack of discretion, under 8 U.S.C. § 1226(c), to release him on bail pending the outcome of his removal proceedings (referred to interchangeably as "deportation" proceedings). Specifically, the issue is whether § 1226(c)'s mandatory-detention provision violates petitioner's right to due process of law under the Fifth Amendment to the United States Constitution by denying him an individualized determination of his suitability for release on bail. For the reasons set forth below, the Court holds that § 1226(c), at least as applied in this case, does not infringe on petitioner's due process rights. Accordingly, the petition is DENIED.

## I. Background

Petitioner is a Mexican citizen and legal permanent resident of the United States. In 1997, petitioner was convicted in state court of violating California Health and Safety Code § 11350, which proscribes possession of certain controlled substances (in this case, 0.36 grams of cocaine base, or "crack" cocaine). On November 16, 1998, upon completing his 135-day jail sentence for this offense, petitioner was released on probation and transferred to the Attorney General's custody to face deportation.[1] The Attorney General sought deportation under 8 U.S.C. § 1227(a)(2)(B)(i), which provides that an alien may be deported for violation of a state's controlled substance laws. There is no dispute that petitioner, based on his state-court conviction for possession of cocaine base, is presumptively deportable on this ground.

Because of the length of time that petitioner has been a lawful permanent resident (almost ten years), and because he has never been convicted of an aggravated felony,[2] petitioner is eligible to seek cancellation of removal. *See* 8 U.S.C. § 1229b(a). Petitioner has applied for this discretionary relief. A removal hearing, in which his application will be considered, is currently scheduled for March 26, 1999. The record reflects that, in the meantime, petitioner asked respondent to release him on bail or at least afford him a bail hearing to assess whether bail is appropriate. Petitioner's request was denied, apparently on the ground that the Attorney General, under 8 U.S.C. § 1226(c), has no discretion to release an alien, such as petitioner, who is facing possible deportation for a controlled substances offense.[3] Petitioner has been in the Attorney General's continuous custody since his arrest on November 16, 1998.

---

1. Oral argument on the petition was held in this Court on March 3, 1999. After a colloquy on the matter, the parties and the Court agreed that petitioner was taken into custody by the Attorney General immediately upon his release from state prison. Because these circumstances clearly trigger § 1226(c)'s mandatory-detention provision, the merits of petitioner's constitutional claim must be addressed to decide this case.

2. Conviction of California Health and Safety Code § 11350 is not an aggravated felony. *United States v. Rios–Favela*, 118 F.3d 653, 654 (9th Cir.1997), *cert. denied,* —— U.S. ——, 118 S.Ct. 730, 139 L.Ed.2d 668 (1998), *overruled on other grounds by United States v. Sanchez–Rodriguez,* 161 F.3d 556 (9th Cir. 1998) (en banc).

3. The statute allows release under certain circumstances, but these exceptions do not apply here. *See* 8 U.S.C. § 1226(c)(2).

In broad brush, the parties' contentions in this Court are as follows. Petitioner maintains that § 1226(c)'s mandatory-detention provision violates his Fifth Amendment right to due process of law. Petitioner submits that, before he may be detained indefinitely in deportation proceedings, he is entitled, at a minimum, to an individualized determination that he is either a flight risk or a danger to the community. Respondent replies that the petition should be denied because a deportable alien in the Attorney General's custody does not enjoy any federal constitutional right to bail or any individualized assessment of fitness for temporary release.

## II. Subject Matter Jurisdiction

This case is adjudicated in the thick of significant new rulings construing the Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104–208, 110 Stat. 3009–546 ("IIRIRA"). After this matter was argued and fully briefed, the United States Supreme Court vacated the Ninth Circuit decision relied on by both parties here to establish this Court's jurisdiction to hear the petition. *Magana–Pizano v. INS*, 152 F.3d 1213 (9th Cir.) (per curiam), *amended*, 159 F.3d 1217 (9th Cir.1998), *vacated and remanded*, ——— U.S. ———, 119 S.Ct. 1137, 143 L.Ed.2d 206 (1999) (No. 98–836). The Supreme Court remanded *Magana–Pizano* for "further consideration" in light of *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. ——— 119 S.Ct. 936, 142 L.Ed.2d 940 (1999) ("*American–Arab*").

■ Subject matter jurisdiction, of course, is a threshold question in any dispute in federal court. While the point requires some explanation, the Court concludes that despite the recent (at least temporary) demise of *Magana–Pizano*, there is jurisdiction to hear the petition under 28 U.S.C. § 2241.

In *Hose v. INS*, 141 F.3d 932 (9th Cir. 1998), the Ninth Circuit addressed recent restrictions on judicial review of immigration matters that IIRIRA imposed in 8

U.S.C. § 1252. Specifically at issue was the scope of § 1252(g), which directs that

> [e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.

*Hose* gave this subsection a broad reading, holding that

> [e]xcept as provided in [8 U.S.C. § 1252], federal courts are divested of all jurisdiction to hear any claim by any alien involving an immigration proceeding.... Section 1252 does not give the district court jurisdiction to hear Hose's habeas petition. Not having been granted jurisdiction under section 1252, that jurisdiction is removed just as the statute says it is.

*Hose*, 141 F.3d at 935. Emphasizing that the petitioner had failed to demonstrate how she lacked effective direct review of her claims, *Hose* further held that IIRIRA's stripping of judicial review, under the circumstances, did not violate the Suspension Clause. *Id.* at 936. *See* U.S. Const. art. I, § 9, cl. 2 ("The Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it."). However, the Ninth Circuit expressly declined to voice any opinion on "whether the statute violates the Suspension Clause as to aliens who then have *no* avenue of judicial review." *Hose*, 141 F.3d at 936 n. 3.

Faced with this reserved question a short time later in *Magana–Pizano*, the Ninth Circuit held that IIRIRA, as construed by *Hose*, violated the Suspension Clause. *Magana–Pizano*, 152 F.3d at 1216–20. In light of this holding, the Ninth Circuit indicated that "the district court retains jurisdiction under 28 U.S.C. § 2241 when the petitioner has no other judicial remedy." *Id.* at 1216. As noted

at the outset, the parties here rely on *Magana–Pizano* to establish this Court's habeas jurisdiction in this proceeding. After *Magana–Pizano* was decided, the panel opinion in *Hose* was vacated and rehearing en banc was granted. *See Hose v. INS,* 161 F.3d 1225 (9th Cir.1998). Thus *Hose's* broad reading of IIRIRA's jurisdictional repeal, on which *Magana–Pizano* was based, is no longer the law of this circuit.

Then came the Supreme Court's recent decision in *American–Arab.* The Court noted, but expressed no opinion, on the split in the circuits over whether IIRIRA repealed habeas jurisdiction under 28 U.S.C. § 2241. *American–Arab,* — U.S. at — & n. 7, 119 S.Ct. at 942 & n. 7. Instead the Court focused on matters of statutory interpretation. In sum, *American–Arab* took a much narrower view of 8 U.S.C. § 1252's jurisdictional limitations than the Ninth Circuit did in *Hose.* At issue again was the proper construction of § 1252(g). The Court observed that this subsection does not necessarily include all deportation-related matters, because it refers only to executive decisions to "commence proceedings," "adjudicate cases," or "execute removal orders." *Id.* at 943 ("It is implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings."). This is in pointed contrast to *Hose's* assumption that § 1252(g)'s jurisdictional repeal applies to any "immigration proceeding." *Hose,* 141 F.3d at 935. Against this backdrop, *Magana–Pizano* was vacated and remanded for further proceedings.

In this Court's view, *Magana–Pizano* was vacated not because habeas jurisdiction has in fact been repealed by IIRIRA, but rather more likely because the decision was predicated on the broad (and now, after *American–Arab,* incorrect) reading that *Hose* gave § 1252(g). The conclusion is inescapable that *Magana–Pizano* unnecessarily faced the constitutional issue of whether § 1252 violates the Suspension Clause. In any event, the Court con-

cludes, for two reasons, that habeas jurisdiction lies in this case under 28 U.S.C. § 2241. First, petitioner's challenge to the constitutionality of his confinement does not implicate the three categories of unreviewable decisions specified in § 1252(g). The propriety of holding petitioner without any possibility of release on bail is distinct from a "decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders." These executive decisions all involve, as *American–Arab* stressed, the exercise of the Attorney General's discretion, which Congress in IIRIRA sought to insulate from judicial review. *American–Arab,* — U.S. at —, 119 S.Ct. at 945 ("Of course many provisions of IIRIRA are aimed at protecting the Executive's discretion from the courts—indeed, that can fairly be said to be the theme of the legislation.") (italics deleted) (citing several subsections of § 1252). In contrast, as discussed more fully below, petitioner here attacks as unconstitutional the lack of *any* discretion to release him on bail pending the outcome of his removal proceedings. Section 1252(g)'s jurisdictional repeal, therefore, does not apply to this case.

Second, on the same day that the Supreme Court vacated *Magana–Pizano,* it denied certiorari in two decisions from other circuits squarely holding that habeas jurisdiction is available under 28 U.S.C. § 2241 despite IIRIRA. *See Goncalves v. Reno,* 144 F.3d 110, 118–23 (1st Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999); *Henderson v. INS,* 157 F.3d 106, 118–22 (2d Cir.1998), *cert. denied,* — U.S. —, 119 S.Ct. 1141, 143 L.Ed.2d 209 (1999). *Goncalves* and *Henderson* reached the same result as *Magana–Pizano* —habeas jurisdiction is still available in immigration cases under 28 U.S.C. § 2241—but traveled a different path. Significantly, unlike *Hose,* these decisions interpreted IIRIRA's jurisdictional limitations as not affecting statutory habeas jurisdiction. While cursory grants of certiorari to vacate and remand, and denials of certiorari, are tea leaves from which

not too much should be taken, under these circumstances, the conclusion is reinforced that *Magana–Pizano* was vacated due to its rationale, not its result. Now lacking any controlling authority in this circuit, this Court follows *Goncalves* and *Henderson* and holds that there is jurisdiction under 28 U.S.C. § 2241 to consider this habeas petition.[4] With this lengthy but necessary introduction, the merits may now be addressed.

## III. Substantive Due Process

■ "It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings." *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) (citation omitted). *See also Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence, his constitutional status changes accordingly"). Due process has both substantive and procedural components. As to the former, aliens who have entered this country, even illegally, have a substantive liberty interest that is implicated by arbitrary detention in deportation proceedings. *Doherty v. Thornburgh,* 943 F.2d 204, 208–09 (2d Cir. 1991); *cf. Barrera–Echavarria v. Rison,*

44 F.3d 1441, 1449–50 (9th Cir.1995) (en banc) (excludable alien enjoyed no substantive due process right to be free from mandatory detention).[5]

■ The more nettlesome question is the level of judicial scrutiny that applies to any restrictions on this liberty. Whether the mandatory-detention provision of § 1226(c) violates due process has been addressed in only two reported decisions. They have split on the issue. Petitioner relies on *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998), which declared § 1226(c) to be unconstitutional on its face. *Cf. Richardson v. Reno,* 162 F.3d 1338, 1362–64 (11th Cir.1998) (finding no due process violation), *petition for cert. filed,* (U.S. Feb. 23, 1999) (No. 98–1361). A crucial predicate to *Martinez's* nullification of the statute was its apparent conclusion that strict scrutiny was the proper standard. *Martinez,* 28 F.Supp.2d at 1281–82. *Martinez* drew mainly from the Supreme Court's decision in *Flores* for this proposition. *Flores* involved a due process challenge to regulations restricting the release of juvenile aliens facing possible deportation. This Court takes a different view and concludes that *Flores* does not direct that strict scrutiny be applied here to review of § 1226(c). The passage in *Flores*

4. The conclusion that § 1252(g) does not bar habeas jurisdiction in this case is consistent with *Walters v. Reno,* 145 F.3d 1032 (9th Cir.1998), *cert. denied,* —— U.S. ——, 119 S.Ct. 1140, 143 L.Ed.2d 208 (1999) (No. 98–730). There, a class of aliens challenged on due process grounds the adequacy of the notice they received of their possible deportation for document fraud. In holding that § 1252(g) did not proscribe judicial review of the claim, *Walters* distinguished the issue at hand—a due process challenge—from the three categories of unreviewable decisions specified in § 1252(g): "[Plaintiffs'] claims do not arise from a 'decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien,' but instead constitute 'general collateral challenges to unconstitutional practices and policies used by the agency.'" *Id.* at 1052 (footnote and citation omitted). Like petitioner here, the plaintiffs in *Walters* sought "to enforce their constitutional rights

to due process in the context of [deportation] proceedings." *Id.* The Ninth Circuit's narrow interpretation of § 1252(g) in *Walters* resembles the Supreme Court's reading of the statute in *American–Arab.* Indeed, the similarity of construction likely explains the recent denial of certiorari in *Walters.* In any event, *Walters,* even though it did not involve habeas jurisdiction, further supports this Court's reading of § 1252(g). *See also Barahona Gomez v. Reno,* 167 F.3d 1228, 1233–34 (9th Cir.1999) (reaffirming *Walters's* interpretation of § 1252(g)).

5. However, no decisions suggest that there is a constitutional right to bail in the deportation context. The law, if anything, is to the contrary. *Carlson v. Landon,* 342 U.S. 524, 545, 72 S.Ct. 525, 96 L.Ed. 547 (1952) ("The Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed in this country.").

on which *Martinez* relied noted that the case did not involve " 'freedom from physical restraint' ... not in the sense of shackles, chains, or barred cells...." *Flores*, 507 U.S. at 302, 113 S.Ct. 1439. The passage also noted that a fundamental liberty interest, if infringed, triggers strict scrutiny—that is, *review for whether the regulation is narrowly tailored to serve a compelling state interest. Id.* at 301–02, 113 S.Ct. 1439. However, *Flores* did not link these two concepts, as *Martinez* appears to have concluded. Indeed, Justice O'Connor's concurrence is the only clear statement in *Flores* that strict scrutiny should be applied to arbitrary detention of aliens. *Id.* at 315–16, 113 S.Ct. 1439. Justice O'Connor presumably would not have emphasized this point in a separate opinion if the *Flores* majority had been as unequivocal on the issue as *Martinez* found.

This Court agrees with Justice O'Connor and petitioner that mandatory detention—of an alien or anyone else—is a significant deprivation of liberty that cuts against our system's deepest values and should trigger close judicial scrutiny. However, in the immigration context, the power to deport necessarily includes (at least to a point) the power to detain. As respondent observes, a venerable line of Supreme Court precedent—now a virtual mantra—has established that the authority of the political branches of government to regulate matters of immigration and nationality is plenary and is subject to only limited judicial review. Immigration legislation generally will withstand constitutional challenge if it is supported by "a facially legitimate and bona fide reason." *Fiallo v. Bell*, 430 U.S. 787, 794, 97 S.Ct. 1473, 52 L.Ed.2d 50

(1977). Other than *Martinez*, petitioner has cited no authority, and this Court is aware of none, directing that mandatory detention of deportable legal resident aliens, at least for a reasonable time to adjudicate removability, is subject to strict scrutiny.[6]

Since the scope of constitutional protections in deportation is indisputably more narrow than in a criminal proceeding, *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038–39, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984), the most demanding standard that could possibly apply is that set forth in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). There the Supreme Court addressed a due process challenge to the Bail Reform Act of 1984. The test used in *Salerno* was twofold: (1) the statute must be regulatory, not punitive; and (2) if the statute is regulatory, it must not "appear[ ] excessive" in relation to the purpose behind the statute. *Id.* at 747, 107 S.Ct. 2095.[7]

The Court assumes for purposes of decision that the *Salerno* standard controls. Even though this is a higher level of scrutiny than is usually applied in this area, *see Fiallo*, 430 U.S. at 792–96, 97 S.Ct. 1473, the Court concludes that § 1226(c)'s mandatory-detention provision is within constitutional bounds. In enacting § 1226(c), Congress decided that certain classes of deportable aliens shall enjoy no right to release while in the Attorney General's custody. These aliens include those with multiple convictions for crimes involving moral turpitude, aggravated felons, those with controlled substances convictions, and those convicted of conspiracy to commit

---

**6.** In fact, there is decisional law to the contrary in the context of mandatory detention of aliens. Despite the nature of the interest implicated, some courts have exhibited discomfort with the notion that immigration regulations must be subjected to such a high standard to pass constitutional muster. *See, e.g., Doherty*, 943 F.2d at 209–10. While an argument can certainly be made that the Supreme Court should take another look at this issue and perhaps clarify the level of scrutiny, *see generally* Debora Ann Gorman, Note,

*Indefinite Detention: The Supreme Court's Inaction Prolongs the Wait of Detained Aliens*, 8 Geo.Immigr.L.J. 47 (1994), this Court must take the law as it finds it.

**7.** *Martinez* purported to apply *Salerno*, but melded it with the parlance of strict scrutiny such that *Martinez* may be read as striking down § 1226(c) for not meeting the higher standard. *See Martinez*, 28 F.Supp.2d at 1281–82.

**1120**

espionage or treason. *See* 8 U.S.C. § 1227(a)(2). Petitioner basically contends that Congress could not have rationally decided that deportable aliens in these categories—or at least controlled substances offenders—can be presumed to be either a flight risk or a danger to society such that they enjoy no possibility of release pending the outcome of their removal proceedings.

The parties debate whether petitioner is a flight risk or a danger because of his state-court conviction. On the current record, it is difficult to evaluate the former issue; obviously inherent in any decision to allow bail is the chance that the alien will not appear at the removal hearing. Even if it is assumed that petitioner here is not a flight risk, the Court concludes that his controlled substances conviction is a sufficient ground to detain him without possibility of bail, at least for a reasonable time while his removal is adjudicated. As an initial matter, "[t]here is no doubt that preventing danger to the community is a legitimate regulatory goal." *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095. The next step, under *Salerno*, is whether the regulation is excessive in furthering that objective. As to the provision at issue in this case— controlled substances convictions, 8 U.S.C. § 1227(a)(2)(B)(i)—the evidence is overwhelming that illegal drug use and trafficking have posed, and will likely continue to pose, a significant threat to society's health and welfare. In light of the drug trade's cost to the community, it is not excessive for Congress to find that aliens convicted of controlled substances offenses can be presumed to be dangerous such that their release on bail, pending the outcome of their removal proceedings, is not warranted. Indeed, as other courts have put it, "[t]he opinions of this Court are filled with tales of drug possession and dealing that spun out of control and erupted into violence." *Polk v. State*, 683 N.E.2d 567, 571 (Ind.1997) (rejecting due process challenge to statute enhancing penalties for drug possession within 1000 feet of schools).

Petitioner, as he urges, may be able to demonstrate at his removal hearing that he is entitled to cancellation of removal because of, among other things, the lack of any real threat to the community that his return would pose. This calculation presumably would turn on a range of considerations, none before the Court in this proceeding. However, the issue here is whether Congress violates due process by *presuming* that petitioner is too dangerous to be released until he proves otherwise at that hearing. Due to the nature of the offense giving rise to petitioner's removal proceedings, the Court holds that this presumption is not an unconstitutional one. Another way to view the matter is that Congress has made a reasonable finding that *anyone* in petitioner's situation, having committed a serious controlled substances offense, is presumptively a threat to social peace not entitled to release.

The Court's conclusion that § 1226(c) is not excessive in furthering the goal of protecting the public is reinforced by other provisions in the statute. Specifically, Congress has excluded a certain class of drug offenders from the mandatory-detention provision. *See* 8 U.S.C. § 1227(a)(2)(B)(i) (excepting "a single offense involving possession for one's own use of 30 grams or less of marijuana"). This exception reflects that Congress in § 1226(c) did not mindlessly incorporate all drug crimes irrespective of the dangerousness that the offense reflects. On the contrary, the statute signals that Congress expressly considered whether all drug-related crimes should be included. Cocaine-related offenses could also have been excluded from the statute's scope but were not. For the reasons just given, their use to trigger mandatory detention of petitioner encounters no constitutional shoal, at least not in the due process area. In conclusion, § 1226(c) restricts a protected liberty interest, but it does not unconstitutionally deprive petitioner of that interest because the means that Congress has chosen to further a legitimate regulatory goal are not excessive.

## IV. Procedural Due Process

Petitioner submits that he is entitled to a bail hearing under the three-part test for procedural due process set forth in *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). The insuperable problem with this argument is that there can be no requirement of procedures for a right—here, bail during deportation proceedings—that does not exist. "This is just the 'substantive due process' argument recast in 'procedural due process' terms .…" *Reno v. Flores,* 507 U.S. 292, 308, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Other courts addressing similar constitutional claims have stressed the same point:

> The dispositive issue is whether [the alien] has a constitutionally protected liberty interest in remaining free pending deportation. If such a right exists, then the statute is *a fortiori* violative of procedural due process rights because it does not provide any procedures for protecting the liberty interest. Conversely, if there is no right, the absence of any protective procedures is immaterial.

*Caballero v. Caplinger,* 914 F.Supp. 1374, 1378 (E.D.La.1996) (construing predecessor version of 8 U.S.C. § 1252). As the Supreme Court recently emphasized in a case involving different issues under the Due Process Clause of the Fourteenth Amendment: "The first inquiry in every due process challenge is whether the plaintiff has been deprived of a protected interest in property or liberty. Only after finding the deprivation of a protected interest do we look to see if the State's procedures comport with due process." *American Manuf. Mut. Ins. Co. v. Sullivan,* — U.S. ——, 119 S.Ct. 977, 989, 143 L.Ed.2d 130 (1999) (citations and internal quotation marks omitted). Since here, as in *Sullivan,* there has been no deprivation of a constitutionally protected interest, "we need go no further." —— U.S. at ——, 119 S.Ct. at 990.

 To be sure, in different circumstances, mandatory detention of a legal permanent resident alien facing possible deportation could become so lengthy that it could shift from a permissible "regulatory" detention for deportation purposes to a form of unconstitutional imprisonment. *See, e.g., Rodriguez–Fernandez v. Wilkinson,* 654 F.2d 1382, 1387–88 (10th Cir. 1981). However, this case does not rise to that level. Petitioner's removal hearing, which will include consideration of his application to cancel removal, is scheduled to take place in less than two weeks. Petitioner does not dispute respondent's assertion that the hearing was put off until March 26, 1999 only because petitioner requested several continuances to enable him to retain counsel and prepare his application. Thus, any delay in holding the hearing so far is fairly attributable to petitioner, not respondent. At least at this stage of petitioner's removal proceedings, there is no due process violation in detaining petitioner without any possibility of release on bail.

## V. Conclusion and Order

For the reasons set forth above, the petition for writ of habeas corpus is DENIED. Judgment shall accordingly be entered for respondent.

**IT IS SO ORDERED.**