Neris Alfredo GALVEZ, Petitioner,

v.

Warren A. LEWIS, District Director,
Immigration and Naturalization
Service, Respondent.

No. Civ.A. 99–488–A.

United States District Court,
E.D. Virginia,
Alexandria Division.

July 7, 1999.

Paul Haar, Washington, DC, for petitioner.

Dennis Michael Kennedy, United States Attorney's Office, Alice E. Loughran, Civil Division, Dept. of Justice, Alexandria, VA, for respondent.

### AMENDED MEMORANDUM OPINION AND ORDER

LEE, District Judge.

THIS MATTER is before the Court on a Petition For Writ of Habeas Corpus. The issues presented are: (1) whether section 236(c) of the Immigration and Nationality Act ("INA") applies to Petitioner; and (2) if that section does apply to Petitioner, whether the statute is unconstitutional on its face as violative of procedural and substantive due process rights under the Fifth Amendment to the United States Constitution. For the reasons set forth below, the Court holds that it lacks jurisdiction to review an immigration judge's decision that INA § 236(c) does or does not apply to an alien like Petitioner who is being detained. On the constitutional question, the Court holds that the statute does not violate procedural and substantive due process under the Fifth Amendment. Thus, the petition for a writ of habeas corpus is denied.

## I. Background

Petitioner, Neris Alfredo Galvez, is a thirty-one-year-old citizen of El Salvador. He entered the United States without inspection near San Diego, California on or about January 20, 1990. Petitioner is married and his wife, Alba Consuelo Lopez, is a United States citizen.

On July 20, 1994, Petitioner was convicted for possession of cocaine in the Circuit Court for Arlington County, Virginia and sentenced to six months, with all time suspended and two years of probation. Petitioner successfully completed his probation on May 24, 1996.

On January 28, 1999, the Immigration and Naturalization Service ("INS") arrested Petitioner at his home and issued him a Notice to Appear as a removable alien based on his July 1994 conviction. The INS placed Petitioner in detention in Virginia Beach, Virginia.

Petitioner filed a motion with the Immigration Court in Arlington for release from INS detention on bond. Initially, the immigration judge held that he was barred from considering the motion for release by virtue of section 303(b) of the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104–208, 110 Stat. 3009 (Sept. 30, 1996). On June 25, 1999, during the pendency of the habeas corpus proceedings before this Court, the immigration judge granted Petitioner's request for a change in his custody status and ordered Petitioner's release from custody upon posting a bond in the amount of $1500.00. That same day, the INS filed a Notice of INS Intent to Appeal Custody Redetermination. Pursuant to 8 C.F.R. § 3.19(i)(2), that notice of intent to appeal automatically stays the immigration judge's custody redetermination decision. While the petition for habeas corpus under the initial immigration judge's ruling denying bond appears to be moot now that the same immigration judge has granted bond to Petitioner, the questions of jurisdiction and constitutionality remain. Thus, the Court will examine both issues. The Court's decision on the habeas corpus petition does not vitiate or overturn the effect of the INS' notice of intent to appeal in creating an automatic stay on the immigration judge's custody redetermination.

Petitioner seeks a declaration that INA § 236(c), which requires detention of criminal aliens, does not apply to him. Alternatively, if the section does apply to him, he seeks a declaration that the section is unconstitutional on its face because it violates procedural and substantive due process rights under the Fifth Amendment of the United States Constitution.

## II. Subject Matter Jurisdiction

*Jurisdiction under the INA*

The Respondent argues that this Court does not have jurisdiction to review the immigration judge's finding that INA § 236(c) applies to Petitioner. The Respondent concedes, however, that the Court has jurisdiction to decide the question of the constitutionality of the federal statute. The Petitioner argues that the Court does have jurisdiction to review the immigration judge's determination under INA § 236(c) because 8 U.S.C. § 1252(b)(9), the INA provision that limits judicial review to final orders of removal, does not apply to bond proceedings.

INA § 236(e), codified at 8 U.S.C. § 1226(e), precludes judicial review of the Attorney General's denial of bond to a detained alien. That provision states:

> The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or *the grant, revocation, or denial of bond* or parole.

8 U.S.C. § 1226(e) (emphasis added). Similarly, another provision of the INA divests this Court of jurisdiction over final orders of removal:

Except as provided in [section 1252] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this act.

8 U.S.C. § 1252(g). The Supreme Court has recently interpreted this provision to mean that it does not preclude judicial review of all "decisions or actions that may be part of the deportation process." *Reno v. American–Arab Anti–Discrimination Committee*, 525 U.S. 471, ——, 119 S.Ct. 936, 943, 142 L.Ed.2d 940 (1999). Section 1252(g) applies to "three discrete actions that the Attorney General may take" including her decision or action to commence proceedings, adjudicate cases, or execute removal orders. *Id.* The Court held that it is "implausible that the mention of three discrete events along the road to deportation was a shorthand way of referring to all claims arising from deportation proceedings." *Id.*

■ Petitioner argues that bond determinations should be considered separate and apart from a deportation or removal hearing or proceeding. 8 C.F.R. § 3.19(d) ("Consideration by the Immigration Judge of an application or request of a respondent regarding custody or bond under this section shall be separate and apart from, and shall form no part of, any deportation or removal hearing or proceeding."). Thus, Petitioner argues that section 1252(g), which relates generally to removal proceedings, does not apply.

Judicial review is limited to final orders of removal. 8 U.S.C. § 1252(b)(9). Petitioner asserts that bond determinations are not part of the removal proceeding. Yet, Petitioner contends that the Court does have jurisdiction to determine his request for an individualized bond hearing, which was, in effect, denied by the immigration judge when he stated that he was barred from considering the motion for release. Petitioner cannot have it both ways. If a bond determination is not a final order of removal and constitutes no part of the removal hearing or proceeding, as Petitioner contends, and judicial review is limited to final orders of removal, then there can be no judicial review of bond determinations.

Petitioner also argues that INA § 236(c), which governs the detention of criminal aliens, does not apply to him because it applies to aliens incarcerated at the time of the statute's enactment. Petitioner relies on the language of the statute which requires the Attorney General to take into custody any alien who is inadmissible or deportable under certain sections "when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense." INA § 236(c)(1), codified at 8 U.S.C. § 1226(c)(1). Petitioner claims it is arbitrary and capricious to apply this statute to him because he was taken into custody by the INS almost five years after he was released from criminal custody in 1994. Petitioner argues that INA § 236(c) does not apply to him because the statute applies to individuals released after October 10, 1998. Petitioner was released on April 4, 1994, the day after his arrest. Thus, Petitioner basically argues that the Transition Period Custody Rules (TPCR), enacted by IIRIRA § 303(b)(3) apply to him.

Essentially, Petitioner asks the Court to review the immigration judge's initial decision that INA § 236(c) applies and that Petitioner cannot be released pending the removal proceeding. Under INA § 236(e), the Court has no power to set aside or review the immigration judge's decision. Section 236(e) [8 U.S.C. § 1226(e)] of the INA provides:

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action

or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole. As the Seventh Circuit interpreted this provision in *Parra v. Perryman,* "The first sentence of § 1226(e) precludes judicial review of the Attorney General's decision to apply § 1226(c)(1) to [the petitioner]; the second sentence precludes review of the Attorney General's decision to deem [the petitioner] ineligible for release under § 1226(c)(2) (or any other source of authority to grant bail)." *Parra v. Perryman,* 172 F.3d 954, 956 (7th Cir.1999). Thus, section 236(e) plainly divests this Court of the authority to review discretionary decisions by the Attorney General under section 1226(a) and (b) regarding arrest, detention, release, bond, or parole. That same section 236(e) also divests the Court of authority to review the decision of an immigration judge under section 236(c) regarding detention, release or the grant, revocation or denial of bond or parole. *See Edwards v. Blackman,* 48 F.Supp.2d 477, 478 (M.D.Pa. 1999); *but see Vanegas Aguilar v. Lewis,* 50 F.Supp.2d 539 (E.D.Va. 1999) (holding that section 236(e) does not strip the Court of jurisdiction to consider the merits of petitioner's habeas corpus petition).[1]

Assuming arguendo that the Court did have jurisdiction to review the immigration judge's initial decision that § 236(c) applies to Petitioner or the immigration judge's later decision to grant Petitioner bond, the petition for habeas corpus would fail on the merits. Petitioner has no right under the statute to release, bond, or a hearing on those issues. Congress enacted IIRIRA to change the structure of immigration law due to the enforcement problems caused by prior legislation. As amended by IIRIRA, INA § 236(c) mandates detention of most criminal aliens pending removal proceedings and precludes judicial review of administrative decisions regarding such detention. In the original draft, the criminal detention provision in INA § 236(c) was intended to take effect on April 1, 1997 and to apply to all aliens placed in removal proceedings after that date. *See* IIRIRA § 303(b)(1); *see also Matter of Noble,* Int.Dec. 3301, at 5, 9, 18 (B.I.A.1997). Shortly before the enactment of IIRIRA, however, Congress, at the request of the INS, enacted a two-year grace period for application of the criminal detention provisions in INA § 236(c). During that period, the Attorney General was permitted to invoke the grace period upon a showing that the INS did not have sufficient resources to implement the mandatory detention provision. That grace period provision and the rules that accompany it are known as the Transition Period Custody Rules ("TPCR"). The TPCR gave the Attorney General the discretionary authority to release "lawfully admitted" criminal aliens who could overcome the presumptions of dangerousness and flight risk. The grace period provision was invoked on October 9, 1996. Thus, it expired on October 9, 1998. Congress provided that the stricter detention provisions in INA § 236(c) would apply to individuals released after the TPCR expired. *See* IIRIRA § 303(b)(2).

---

1. In *Vanegas Aguilar,* Judge Cacheris interpreted INA § 236(e) as preventing judicial review of the Attorney General's discretionary judgment in applying the detention provisions in INA § 236(c). Slip op. at 10. Judge Cacheris concluded that the preclusion of judicial review did not apply to Vanegas Aguilar because he was being detained pursuant to the mandatory provisions of § 236(c) rather than the discretionary provisions. In contrast, this Court interprets § 236(c) as precluding not only discretionary judgments by the Attorney General regarding application of § 236(c), but also "any action or decision by the Attorney General under this section regarding the determination or release of any alien or the grant, revocation, or denial of bond or parole." INA § 236(e). As the Seventh Circuit found in *Parra,* the second sentence of § 236(e) precludes review of the Attorney General's decision to deem certain aliens ineligible for release. *Parra,* 172 F.3d 954, 956; *see also Edwards,* 48 F.Supp.2d at 479.

Under § 303(b)(3)(A) of the IIRIRA, the Attorney General was required to take into custody certain classes of aliens, including aliens convicted of aggravated felonies and controlled substances offenses. Under § 303(b)(3)(B), which the immigration judge used to decide that he was barred from considering Petitioner's motion for release, such an alien could be released only if the alien (1) was lawfully admitted, or was not lawfully admitted but could not be removed because the country of removal would not accept the alien, (2) would not pose a danger, and (3) was not a flight risk. "An alien subject to the TPCR who is not lawfully admitted is not eligible to be considered for release from custody." IIRIRA § 303(b)(3); 8 C.F.R. § 236.2(c)(2) (1998).

Respondent argues that even if the TPCR applied to Petitioner, he is not eligible for release due to his illegal immigration status. The TPCR provide that the Attorney General may release the alien only if he or she was lawfully admitted to this country or cannot be removed because the designated country will not accept him or her. In this case, Respondent asserts, it is undisputed that Petitioner entered this country illegally and never adjusted his status to that of a lawful permanent resident.

Petitioner argues that the mandatory detention provisions of INA § 236(c) do not apply differently to lawfully admitted aliens and illegal aliens. Petitioner claims that the only difference is that whereas mandatory detention is prescribed for all illegal aliens, mandatory detention for lawfully admitted aliens applies only in cases where the alien is convicted of an aggravated felony for immigration purposes.

■ The Court holds that Petitioner is not subject to the TPCR because he was placed in removal proceedings after April 1, 1997. *See Parra,* 172 F.3d 954, 955 (holding that because the removal proceeding began after April 1, 1997, IIRIRA governed). Petitioner was arrested in January 1999 and that is when his removal proceedings began. Thus, the permanent detention provisions, which are stricter than the TPCR, found in INA § 236(c) apply to Petitioner. IIRIRA §§ 309(a), (c). The Court further concludes that even if the TPCR did apply to Petitioner, he still would not be eligible for release from custody under federal regulation, 8 C.F.R. § 236.1(c)(2), which governs custody issues and release procedures for aliens not lawfully admitted. Section 236.1(c)(2) provides, "Subject to paragraph (c)(6)(i) of this section, but notwithstanding any other provision within this section, an alien subject to the TPCR who is not lawfully admitted is not eligible to be considered for release from custody." [2] Petitioner is not now and never was a lawful permanent resident. Indeed, Petitioner was not eligible to become a lawful permanent resident after his 1994 conviction for possession of a controlled substance.[3] Petitioner conceded his deportability in February 1999. In addition, Petitioner's country of origin—El Salvador—accepts the return of its citizens. Although Petitioner was granted temporary protected status as an alien from El Salvador, that status expired in 1992, *see* 59 Fed.Reg. 62751 (Dec. 6, 1994), available in 1994 WL 676657 ("Temporary Protected Status [for the Salvadorans] ended on June 30, 1992."), and it did not confer any permanent right to remain in the United States. Thus, even if Petitioner is correct that the TPCR applies to him, he is not eligible for release from custody because he was not lawfully admitted to

---

**2.** Paragraph (c)(6)(i) permits a district director to consider releasing an alien if he or she cannot be removed from the United States because the designated country of removal or deportation will not accept the alien's return. That provision does not apply here because El Salvador is not such a country.

**3.** Petitioner moved to vacate this conviction, but the Arlington County Circuit Court denied that petition on April 1, 1999.

this country.[4]

*Retroactivity*

 Petitioner argues that INA § 236(c) may not be applied retroactively to him since he was released from criminal custody on July 20, 1994. The Court holds that there is no retroactivity concern here. If the application of the new rule in INA § 236(c) would eliminate a substantive right belonging to the petitioner, then there may be a retroactivity problem. In this case, however, whether the TPCR apply or the stricter § 236(c) detention rules apply, Petitioner does not have a right to remain free from detention during removal proceedings. Indeed, under the old version of the statute in effect before the new legislation and the TPCR, Congress had the authority to detain an alien suspected of entering the country illegally pending the deportation proceeding regardless whether the alien was convicted of a felony. *See Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Congress had already eliminated any presumption of release pending deportation and committed the decision on release to the discretion of the Attorney General. *Id.* (citing *Carlson v. Landon*, 342 U.S. 524, 538–40, 72 S.Ct. 525, 96 L.Ed. 547 (1952)). Furthermore, as the district court held in *Edwards v. Blackman*, 1999 WL 350122, at *3, there is no retroactivity concern when the newly enacted statute is jurisdictional in nature. "Application of a new jurisdictional rule usually 'takes away no substantive right but simply changes the tribunal that is to hear the case.' Present law normally governs in such situations because jurisdictional statutes 'speak to the power of the court rather than to the rights or obligations of the parties.'" *Id.* (quoting *Landgraf v. USI Film Prods.*, 511 U.S. 244, 274, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994)) (citations omitted). Thus, the application of section 236(e), which divests this Court of jurisdiction to review discretionary judgments and detention decisions by the Attorney General under § 236(c), is not impermissibly retroactive as applied to Petitioner.

*Exhaustion of Remedies*

The Respondent also contends that the Court lacks jurisdiction to decide this issue because the Petitioner failed to exhaust his administrative remedies by refusing to appeal the denial of a bond hearing to the Board of Immigration Appeals ("BIA"). Petitioner responds that such an appeal is unnecessary because it would be futile in light of the BIA's holdings in *Matter of Noble*, Int.Dec. 3301 (B.I.A.1997), and *Matter of Valdez*, Int.Dec. 3302 (B.I.A. 1997). In *Noble*, the BIA upheld an immigration judge's finding that he was barred from granting bond to an alien convicted of distribution of cocaine due to the mandatory detention provision in INA § 236(c). In *Valdez*, the BIA reversed an immigration judge's grant of bond to an alien convicted of simple possession of marijuana and held that the mandatory detention provision applied retroactively to bar a discretionary bond hearing to an alien convicted of a non-aggravated felony. The Supreme Court has recently affirmed the tradition of according strong deference to the BIA's interpretation of the INA. *See Immigration & Naturalization Serv. v. Aguirre–Aguirre*, —— U.S. ——, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999).

---

4. The decision by Judge Cacheris in *Vanegas Aguilar* to grant the petition for habeas corpus on the merits is distinguishable from this case. Vanegas Aguilar was a lawful permanent resident and he was convicted of attempted carnal knowledge of a minor. *Vanegas Aguilar*, 50 F.Supp.2d at 540. In contrast, the petitioner herein was not a lawful permanent resident and he was convicted of possession of a controlled substance. This distinc-

tion is important because the statute allows for release of a lawful permanent resident or an unlawful permanent resident who cannot be returned to his country of origin. Vanegas Aguilar falls within the lawful permanent resident category. The Petitioner in the instant case, however, does not fall into either of those categories and is therefore not eligible for release. Thus, *Vanegas Aguilar* does not counsel a different result.

■ Under the immigration laws, exhaustion of administrative remedies is statutorily required only on appeals to final orders of removal. 8 U.S.C. § 1252(d)(1). Exhaustion is not required when a petitioner challenges conditions imposed on bond. *Rowe v. Immigration & Naturalization Serv.*, No. Civ. A. 98–11511–GAO, 1999 WL 289362, at *2 (D.Mass. Apr.30, 1999); *Pastor–Camarena v. Smith*, 977 F.Supp. 1415, 1417 (W.D.Wash.1997) (finding no exhaustion requirement in a pre-deportation challenge to bond denial); *Montero v. Cobb*, 937 F.Supp. 88, 91 (D.Mass.1996) (stating that there is no federal statute that imposes an exhaustion requirement on aliens taken into custody pending their removal); *cf. Lleo–Fernandez v. Immigration & Naturalization Serv.*, 989 F.Supp. 518, 519 (S.D.N.Y.1998) (holding that an alien must exhaust administrative remedies before seeking habeas relief from detention). Furthermore, the Supreme Court has held that one circumstance in which district courts need not require exhaustion is when an administrative body has predetermined the issue before it. *See McCarthy v. Madigan*, 503 U.S. 140, 148, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992).

■ The Court holds that exhaustion of administrative remedies is not required here primarily based on the fact that an appeal of this issue to the BIA appears to be futile. Thus, the Court will not abstain from deciding this case on the basis of Petitioner's failure to exhaust his administrative remedies. Although some courts have found that judicial intervention during the administrative agency process disrupts the process, *see e.g., Acura v. Reich*, 90 F.3d 1403, 1408–09 (9th Cir.1996); *Federal Trade Comm'n v. Standard Oil Co.*, 449 U.S. 232, 242, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (stating that judicial intervention before the agency process is final "denies the agency an opportunity to correct its own mistakes and to apply its expertise."), this Court holds that aliens like Petitioner still have a right to petition

a district court for a writ of habeas corpus and the Court has jurisdiction to review such petitions, especially where they involve constitutional challenges to statutes. *See e.g., Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999); *Hinojosa–Perez v. Eddy*, 55 F.Supp.2d 1001, ——, slip op. at 7 (D.Alaska 1999); *cf. Goncalves v. Reno*, 144 F.3d 110, 120 (1st Cir.1998) (holding that neither AEDPA nor IIRIRA expressly repeals the availability of habeas review of deportation or removal orders); *Henderson v. Immigration & Naturalization Serv.*, 157 F.3d 106, 118–20 (2d Cir. 1998) (same).

Under INA § 236(e), this Court does not have jurisdiction to set aside any action or decision by the Attorney General regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole. The immigration judge's decision that INA § 236(c) applies to Petitioner is a decision regarding his detention and bond. The immigration judge decided that he could not decide Petitioner's motion for release because the judge was bound by the mandatory detention provisions of INA § 236(c). That decision, in effect, is a denial of bond. Thus, under INA § 236(e), this Court does not have jurisdiction to review the denial of bond.

However, as established above, even if the Court did retain the power to review the denial of bond and the application of the mandatory detention provisions, the petition for habeas corpus would still be denied. There is no statutory authority for allowing Petitioner's release. Nor is there any statutory right to an individualized bond hearing. Petitioner's status as an unlawful alien prevents a contrary finding. While the Court is not unsympathetic to Petitioner's desire to remain in the United States to care for his wife and child and to enjoy the freedoms of this country, the Court must follow the clear mandate of Congress as expressed in the immigration statutes. Congress has consistently enacted legislation restricting the rights of un-

lawful residents. Their rights are considerably less than those of lawful permanent residents, which are even less than those of natural citizens. The Court must also take into consideration the policy consequences of a decision that would require an individualized bond hearing for each and every illegal alien in Petitioner's circumstance. Thus, the petition for habeas corpus must be denied because the Court has no power under the statute to review a decision by an immigration judge to grant or deny bond.

*Jurisdiction over the Constitutional Question*

■ In contrast to the Court's holding that it lacks jurisdiction to review the grant or denial of bond under INA § 236(c), the Court holds that it does have jurisdiction to review the question of the constitutionality of this statute. While INA § 236(e) may bar review of detention or bond decisions, it does not bar challenges to the statute itself. *Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999) (holding that § 1226(e) "does not purport to foreclose challenges to § 1226(c) itself, as opposed to decisions implementing that subsection"). At oral argument, Respondent conceded this Court's jurisdiction to decide the constitutional question.

The Court must note, however, that its inquiry in the sphere of immigration legislation is traditionally limited. *See Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977). Congress has an extraordinary amount of discretion in the area of immigration legislation. *See e.g.*, U.S. Const. Art. I, § 8, cl. 4 ("The Congress shall have Power ... To establish an uniform Rule of Naturalization...."). This is due, in part, to the fact that removal of aliens is a power inherent in every sovereign and the fact that such power is largely exercisable by the political branches of government. *See Mathews v. Diaz*, 426 U.S. 67, 80–81, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976); *Carlson v. Landon*, 342 U.S. 524, 534, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *Fong Yue Ting v. United States*, 149 U.S. 698, 711, 13 S.Ct. 1016, 37 L.Ed. 905 (1893). Thus, based on the plenary authority of the political branches in this area, the Court exercises judicial restraint. *See, e.g., Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953); *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 542, 70 S.Ct. 309, 94 L.Ed. 317 (1950); *Palma v. Verdeyen*, 676 F.2d 100, 103 (4th Cir.1982) (citing *Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473); *Morrobel v. Thornburgh*, 744 F.Supp. 725, 727 (E.D.Va.1990). "Over no conceivable subject is the legislative power of Congress more complete...." *Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473 (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)).

### III. Due Process

Petitioner makes several arguments in support of his claim that the statute prohibiting a hearing to determine bond is an unconstitutional violation of his right to due process. Petitioner contends that a blanket mandatory detention for all the non-citizens covered by INA § 236(c) does not satisfy the requirement of substantive due process. Petitioner claims that even as a deportable alien, he is entitled to due process, *Plyler v. Doe*, 457 U.S. 202, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982), and that his detention implicates a liberty interest for which he has a right to a hearing, *United States v. Montalvo–Murillo*, 495 U.S. 711, 110 S.Ct. 2072, 109 L.Ed.2d 720 (1990). Petitioner asserts that although Congress had a legitimate regulatory goal in detaining aliens with criminal convictions, their detention without a hearing to determine danger to the community and the level of flight risk is excessive in relation to the regulatory goal. *See United States v. Salerno*, 481 U.S. 739, 747, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987) (formulating a test where the regulatory goal should be compared to the act to determine whether excessive). Under the *Mathews v. Eldridge* test, Petitioner ar-

gues that the risk of erroneous deprivation is substantial and that the administrative or fiscal burden on the government in providing a bail hearing is minimal.

■ Substantive due process guards against governmental interference with those rights "implicit in the concept of ordered liberty." *Palko v. Connecticut*, 302 U.S. 319, 324–25, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Procedural due process focuses on the fairness of the procedures used by the government when it acts to deprive a person of life, liberty, or property. *Mathews v. Eldridge*, 424 U.S. 319, 332–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). It is well settled that the Fifth Amendment entitles aliens to due process of law in deportation proceedings. *Reno v. Flores*, 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Plyler*, 457 U.S. at 202, 102 S.Ct. 2382.

### A. Substantive Due Process

■ The Court will begin its analysis with the oft-used strong presumption that the immigration statute at issue here is constitutional. *See Fairbank v. United States*, 181 U.S. 283, 285, 21 S.Ct. 648, 45 L.Ed. 862 (1901). Despite this presumption and the deferential review commonly accorded immigration legislation, *see e.g., Fiallo v. Bell*, 430 U.S. at 792, 97 S.Ct. 1473, the Court will employ the stricter *Salerno* test to determine whether Petitioner's detention is an unconstitutional violation of substantive due process. *See Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114, 1119 (S.D.Cal. 1999) (applying the Salerno test to decide whether the denial of an individualized determination of suitability for release on bail is an unconstitutional violation of substantive due process); *Nhoc Danh & Uong Ly v. Demore*, —— F.Supp.2d ——, ——, No. C 99–1531 FMS, slip op. at 8 (N.D.Cal. May 28, 1999) (same); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186, 1190 (D.Or. 1999) (same); *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998) (same). The *Salerno* test entails determining whether the statute was regulatory and not punitive, and whether, if regulatory, the statute was excessive in relation to the purpose behind the statute. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095 (finding no due process violation where pretrial detention was regulatory rather than punitive); *cf. Morrobel v. Thornburgh*, 744 F.Supp. 725, 727 (E.D.Va.1990) (finding that civil deportation proceedings feature fewer procedural due process protections than a criminal trial and that the Salerno protections are not binding in this case and instead using the test of whether the statute is based upon a facially legitimate and bona fide reason).

■ Deportation is not a criminal proceeding and its purpose is not punitive. *INS v. Lopez–Mendoza*, 468 U.S. 1032, 1038, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984); *Carlson v. Landon*, 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952). Detention pending deportation is merely an incident to this process. It was not intended by Congress as punishment for illegal entry into the country. Rather, the detention serves a regulatory purpose-preventing aliens from disappearing pending resolution of deportation proceedings. In addition, the detention serves another regulatory purpose-preventing danger to the community as a result of the detainee's conduct. "There is no doubt that preventing danger to the community is a legitimate regulatory goal." *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095. Even if it is assumed that Petitioner is not dangerous to the community based on the fact that he was convicted in 1994 of drug possession, but has not been convicted of any crimes since that time, there is still the probability that Petitioner is a flight risk. Petitioner has conceded that he is an illegal alien who gained admittance to the United States without lawful process. This case turns on Petitioner's unlawful alien status in this country. *See supra part II*. As the Supreme Court held in *Reno v. Flores*, 507 U.S. at 306, 113 S.Ct. 1439, "Congress has the authority to detain aliens suspected of

entering the country illegally pending their deportation hearings."

The next step under *Salerno* is to determine whether the regulation is excessive in furthering the legislative objective. The Court holds that detention of aggravated felons is not excessive in relation to the goal of Congress in preventing the flight of aliens involved in deportation proceedings and preventing future danger to the community due to the conduct of aliens who are aggravated felons. "[I]t is not excessive for Congress to find that aliens convicted of controlled substances offenses can be presumed to be dangerous such that their release on bail, pending the outcome of their removal proceedings, is not warranted." *Diaz–Zaldierna,* 43 F.Supp.2d at 1119. Congress' conclusion that an alien who has been convicted of a drug offense is not entitled to release due to the potential threat to society is consistent with the government's interest in rooting out those elements who facilitate drug trafficking and those who assist consumers and sellers of dangerous drugs. The Court notes that the exception for marijuana found at 8 U.S.C. § 1227(a)(2)(B)(I) (for a "single offense involving possession for one's own use of 30 grams or less of marijuana") reflects Congress' considered judgment not to include cocaine-related offenses in the exception. *Id.* at 1120. Detention of aliens who are convicted users and dealers of dangerous drugs such as cocaine ensures their presence for removal proceedings. *Id.* at 1120.

Petitioner has not been deprived of a liberty interest such that the INS has violated his right to substantive due process. Petitioner may be released simply by withdrawing his appeal of the deportation proceeding and returning voluntarily to his native land of El Salvador, thus ending his detention immediately. Petitioner most likely had the opportunity to avoid deten-tion by agreeing to leave the country upon his January 1999 arrest.[5] He chose not to leave. Several other courts have held that aliens who prolong their deportation have no constitutional right to be free on bail while awaiting the conclusion of deportation proceedings. *See e.g., Parra v. Perryman,* 172 F.3d 954, 1999 WL 173692, at *3; *Hinojosa–Perez v. Eddy,* 55 F.Supp.2d at ——, slip op. at 11 (D.Alaska 1999)·(stating that Hinojosa–Perez "holds the keys to his own release" because he can end his detention by withdrawing his appeal and returning to his native land); *see also Balogun v. Immigration & Naturalization Serv.,* 9 F.3d 347, 350–51 (5th Cir.1993) ("No court that has considered the issue has held that the INS must release a deportable alien from detention if the alien engages in conduct which prolongs his detention."); *Doherty v. Thornburgh,* 943 F.2d 204, 208–09 (2d Cir.1991) (stating that Doherty would not have been detained if he had agreed to his deportation); *Dor v. District Director, Immigration & Naturalization Serv.,* 891 F.2d 997, 1002–03 (2d Cir.1989) (stating that Dor is largely responsible for the delay in his deportation). Petitioner has prolonged his deportation by withdrawing his administrative appeal which took the case off the expedited docket and by filing several continuances. Furthermore, there is nothing other than the pending appeal that stands in the way of Petitioner's release because he is a citizen of El Salvador, a country to which he is not precluded from returning due to outstanding circumstances. *See Hermanowski v. Farquharson,* 39 F.Supp.2d 148 (D.R.I. 1999) (stating that the detainee was prohibited from returning to Poland due to circumstances beyond his control); *Tam v. Reno,* No. C–98–2835 MHP, 1999 WL 163055 (N.D.Cal. Mar.22, 1999) (same except for different country-Vietnam).

---

5. Arrested aliens are almost always offered the choice of departing the country voluntarily. *Reno v. Flores,* 507 U.S. 292, 307, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); 8 U.S.C. § 1252(b) (1988 ed., Supp. III); 8 C.F.R. § 242.5 (1992). As many as 98% of them take that course. *See Immigration & Naturalization Serv. v. Lopez–Mendoza,* 468 U.S. 1032, 1044, 104 S.Ct. 3479, 82 L.Ed.2d 778 (1984).

While there may be some circumstances where detention could become so lengthy that it could become unconstitutional, this case does not rise to that level. Petitioner has been in custody since January 28, 1999. His removal hearing had been scheduled, but it was delayed due to Petitioner's several requests for continuances to retain counsel and prepare an application for asylum. These delays are not attributable to the INS or the courts, they were caused by Petitioner himself. *See Diaz–Zaldierna,* at 1121.

### B. Procedural Due Process

■■■■■ Petitioner also claims a procedural due process violation in his detention. This is just the "substantive due process" argument recast in "procedural due process" terms, and the Court rejects it for the same reasons. *See Reno v. Flores,* 507 U.S. 292, 308, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). Under normal circumstances, the determination of whether there is a procedural due process violation is governed by a balancing of the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Here, however, the Court has already concluded that there was no substantive due process violation because Petitioner has no right to bail or such a hearing under INA § 236(c). If the alien has no substantive right to bail or bond pending the result of deportation proceedings, then the absence of any protective procedures cannot be a violation of procedural due process. *See Diaz–Zaldierna,* at 1120; *Caballero v. Caplinger,* 914 F.Supp. 1374, 1378 (E.D.La.1996) ("if there is no right, the absence of any protective procedures is immaterial"). As Respondent correctly argues, Petitioner can only be entitled to a meaningful procedure, the process that is due, if he first shows the deprivation of a protected constitutional interest. As demonstrated, Petitioner has no statutory or constitutional right to release within the United States while his removal proceedings are pending. The process itself—an individualized bond hearing—cannot be the protected interest. *See Ohio Adult Parole Auth. v. Woodard,* 523 U.S. 272, 118 S.Ct. 1244, 1249 n. 2, 140 L.Ed.2d 387 (1998) (holding that asserting a mere protected interest in a process itself is not a cognizable claim); *Olim v. Wakinekona,* 461 U.S. 238, 249–50, 103 S.Ct. 1741, 75 L.Ed.2d 813 (1983) (finding that an individual cannot claim a constitutional right in the "process" until he or she can demonstrate a cognizable liberty interest).

Notwithstanding that conclusion, if the Court did balance the *Mathews* factors, Petitioner's claim of a procedural due process violation would still fail. Balancing the risk of an erroneous deprivation against the government's interest, the Court holds that the government's interest outweighs that of Petitioner. Petitioner's right to freedom pending removal is not absolute, especially in light of his illegal alien status and drug conviction. The risk of error is low because there is no dispute about Petitioner's alien status or his conviction.

The government's interest, on the other hand, is substantial. In addition to the administrative burden of conducting such individualized bond hearings for each and every detained alien, the United States has another interest in maintaining the detention without bond-the flight risk. Nearly 90 percent of aliens released from custody pending removal proceedings abscond and are not removed from the United States. 62 Fed.Reg. 10,312, 10,323 (1997). Petitioner has no incentive to appear for the remainder of his proceedings because it is a virtual certainty under the statutes and the INS' past practices that he will be removed due to his conviction and unlawful status here. Petitioner did not offer any

alternative safeguards. The Court is uncertain of how to ensure Petitioner's presence at his removal hearing without detaining him in the interim. Thus, the Court holds that the detention of Petitioner, an illegal alien, during the pendency of removal proceedings without an individualized bond hearing does not violate procedural due process. *But see Van Eeton, Jr. v. Beebe,* No. 99–16–PA, 1999 WL 312130 (D.Or. Apr.13, 1999) (granting petition for writ of habeas corpus for individualized bond hearing); *Pastor–Camarena v. Smith,* 977 F.Supp. 1415 (W.D.Wash.1997) (granting petition for a writ of habeas corpus and ordering the INS to conduct an individualized bond hearing to determine whether and under what conditions petitioner could be released from custody pending conclusion of deportation proceedings).

"Section 1226(c) is plainly within the power of Congress." *Parra,* 172 F.3d 954, 956. Congress has sweeping authority to prescribe the treatment of aliens. *Fiallo,* 430 U.S. at 792, 97 S.Ct. 1473. There is nothing unconstitutional about the detention of an alien during deportation proceedings. *Arias v. Rogers,* 676 F.2d 1139, 1143–44 (7th Cir.1982). According to pre-IIRIRA Supreme Court precedent, an alien was not entitled to release pending the conclusion of deportation proceedings. *See Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952). Thus, as the Seventh Circuit opined in *Parra,* if there was no such right to release when the Attorney General had broad authority to grant discretionary relief from deportation, then there can be no doubt about the constitutionality of § 1226(c) now that the powers to forego removal have been curtailed. *Parra,* 172 F.3d 954, 958.

### V. Conclusion

For the reasons set forth above, the petition for writ of habeas corpus is hereby DENIED.

The Clerk is directed to forward a copy of this Order to counsel of record.