**Nhoc DANH and Uong Ly, Petitioners,**

v.

**Charles DEMORE, Acting District Director, San Francisco District Office, U.S. Immigration & Naturalization Service, Respondent.**

No. C99–1531FMS.

United States District Court, N.D. California.

May 28, 1999.

---

constitutionality of Immigration and Nationality Act ("INA") § 236(c) (codified at 8 U.S.C. § 1226(c)). The Application requires the Court to determine (1) whether, as resident aliens, petitioners have a substantive due process right to freedom from arbitrary detention; (2) whether § 236(c) violates that right by requiring detention without possibility of bail for criminal aliens awaiting deportation; and (3) whether § 236(c) violates petitioners' procedural due process right to a hearing "at a meaningful time and in a meaningful manner." The Court finds that § 236 violates petitioners' substantive and procedural due process rights. The Application is GRANTED.

Frank M. Tse, Asian Law Caucus Inc, San Francisco, CA, for Nhoc Danh, Uong Ly.

Robert Yeargin, U.S. Attorney's Office, San Francisco, CA, for Charles Demore.

Kathryn Palamountain, ACLU Foundation of Northern California, San Francisco, CA, Judy Rabinovitz, ACLU Foundation Immigrants', New York City, for American Civil Liberties Union Foundation Immigrants' Rights Project.

ORDER GRANTING APPLICATION FOR WRIT OF HABEAS CORPUS; GRANTING MOTION TO VACATE APRIL 9, 1999 ORDER; VACATING JUDGMENT

FERN M. SMITH, District Judge.

## INTRODUCTION

Pending before the Court is petitioners' Application for a Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 (the "Application"). By this Application, petitioners mount an "as applied" challenge to the

## BACKGROUND

Petitioners Nhoc Danh and Uong Ly are lawful permanent residents who arrived in this country in 1983 as refugees from Vietnam. They have seven children, aged eight to twenty-two years, four of whom are native-born U.S. citizens.

In December 1998, petitioners pled no contest to one count of Fraudulent Obtainment of AFDC benefits [1] and received a sentence of two-years' probation and restitution. Thereafter, the Immigration and Naturalization Service arrested petitioners, placed them in detention, and initiated removal proceedings against them. Petitioners have been detained since January 13, 1999. They contest only their detention pursuant to INA § 236(c).

Section 236(c) [2] provides for the mandatory detention of aliens who have committed, *inter alia*, an "aggravated felony" as defined in INA § 101(a)(43)(M)(i) (codified at 8 U.S.C. § 1101(a)(43)(M)(i)). It gives the Attorney General no discretion to release detainees based on a determination of flight risk or dangerousness. Under § 101(a)(43)(M)(i), an "aggravated felony"

---

1. *See* Cal. Welf. & Inst.Code § 10980(c)(2).

2. The Attorney General shall take into custody an alien who—

    . . .

(B) is deportable by reason of having committed any offense covered in section . . . 237(a)(2)(A)(iii). . . .

is defined as "fraud or deceit in which the loss to the victim or victims exceeds $10,-000." *Id.* Petitioners were detained because their conviction for fraudulent obtainment fell within that definition.

Despite their ineligibility for bond under § 236(c), petitioners moved the Immigration Court for immediate release, contending that they are neither a flight risk nor a danger to the community. After subsequently changing their no contest plea to one count of simple perjury[3]—an act that arguably fell *outside* the definition of an "aggravated felony"—they also moved the Immigration Court to terminate their removal proceedings. While these motions were pending, petitioners filed the instant § 2241 Application. By this Application, petitioners seek (1) a finding that § 236(c) is unconstitutional *as applied* to them; (2) an individualized bond hearing before the Immigration Judge ("IJ"), within two business days, to determine whether petitioners present a flight or safety risk; (3) reasonable attorneys' fees and costs.

On April 2, 1999, IJ Alberto Gonzalez denied the motion to terminate on the ground that petitioners' conviction for perjury still amounted to an "aggravated felony" under INA § 101(a)(43)(M)(i). *See* Order Denying Motion to Terminate at 2. Relying on a technical distinction between a "conviction" and an "offense," the IJ reasoned that petitioners' conceded involvement in acts that resulted in a loss to the government exceeding $10,000 was sufficient to characterize their conviction for perjury as one for "aggravated felony" under § 236(c).[4] The IJ consequently denied the motion for an individualized bond hearing because, under § 236(c), aliens subject to removal proceedings are categorically ineligible to apply for bond. "[T]here is no authority for the Court to consider any evidence relating to [petitioners'] likelihood of flight risk and danger of the com-

munity." Amended Order Denying Request for Bond Determination Hearing (the "IJ's Amended Order").

On April 9, 1999, this Court summarily dismissed petitioners' § 2241 application as moot, reasoning that the IJ had considered and denied the request for bond. The Court reached this conclusion without the benefit of the IJ's Amended Order, which clarified that no individualized assessment of bond versus detention had in fact been made.

Petitioners thereafter moved under Federal Rules of Civil Procedure 59(e) and 60(b) to vacate or set aside the Court's April 9 Order. The basis of this motion was that the IJ had not considered petitioners' dangerousness and flight risk; instead, he denied bond because he believed that § 236(c) gave him no authority to grant it. In response to the motion, the Court issued an order to show cause to the government (1) why the April 9 Order should not be vacated, and (2) why petitioners' § 2241 application should not immediately be granted.

## DISCUSSION

### I. Legal Standard

■ A district court may entertain a petition for a writ of habeas corpus challenging the execution of a federal sentence only on the ground that the sentence is being executed "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3); *United States v. Giddings*, 740 F.2d 770, 772 (9th Cir.1984).

■ A federal statute is presumed constitutional unless shown otherwise. *Martinez v. Greene*, 28 F.Supp.2d 1275, 1281 (D.Colo.1998). To prevail on a facial challenge to the constitutionality of a statute, the petitioner "must establish that no set of circumstances exists under which

---

3. *See* Cal.Pen.Code § 118.

4. The Court has no jurisdiction to review the IJ's decision. Nothing herein should be con-

strued as taking any position on the correctness of that decision.

the [statute] would be valid." *United States v. Salerno,* 481 U.S. 739, 745, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). To prevail on an "as applied" challenge, the petitioner need only show that the statute, as applied to him, is invalid.

## II. Analysis

### A. Jurisdiction

■ District courts have jurisdiction under 28 U.S.C. § 2241 to entertain challenges to § 236(c) itself, as opposed to the manner in which it is enforced. *See Parra v. Perryman,* 172 F.3d 954, 1999 WL 173692 at *2. Respondent concedes jurisdiction of · this Court. Respondent's Amended Response to the Court's Order to Show Cause (the "Government's Response") at 6 ("[C]hallenges to the constitutionality [of § 236(c) ] continue to be heard in the district courts.").

### B. Motion to Vacate the Court's April 9, 1999 Order

Respondent argues that petitioners have already received an individualized bond determination hearing. In respondent's view, the IJ considered petitioners' request and concluded that they were ineligible for release because they fell within § 236(c)'s blanket denial of bond. *See* IJ's Amended Order. Respondent therefore opposes the motion to vacate this Court's April 19 Order (the "Order") only to the extent that vacating the Order would allow petitioners to seek another individualized bond determination before the IJ. Respondent does not oppose the motion as long as petitioners' sole purpose is to challenge the constitutionality of § 236(c).

The purpose of petitioners' original request for a bond hearing, however, was to seek a determination that they are not a flight risk or a danger to society and thus entitled to release on bond. As the IJ's Amended Order makes clear, the IJ did not—and could not—make this determination. This Court's Order denying petitioners' § 2241 application erroneously assumed that such an individualized determination had taken place when in fact it had not. Accordingly, the Order is VACATED in its entirety. Petitioners may not only challenge the constitutionality of § 236(c) but, if they prevail, they may seek an individualized bond determination that takes their dangerousness and risk of flight into consideration.

### C. Substantive Due Process

Petitioners' substantive due process challenge raises three questions that the Court considers in turn: (1) whether, in the first instance, substantive due process review applies to immigration laws; (2) if so, what level of scrutiny applies to this Court's review of § 236(c); and (3) whether § 236(c) survives the applicable standard of review. The second of these questions is both the most important and the most difficult.

### 1. Do Legal Aliens Enjoy a Substantive Due Process Right to Freedom from Arbitrary Detention?

■ Although the government questions whether substantive due process analysis is even appropriate in the immigration context, the case law is clear that aliens in deportation proceedings are entitled to both substantive and procedural due process of law. *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles aliens to due process of law in deportation proceedings."). As the Second Circuit observed, even illegal aliens "have a substantive due process right to be free of arbitrary confinement pending deportation proceedings." *Doherty v. Thornburgh,* 943 F.2d 204, 209 (2d Cir.1991); *see also Foucha v. Louisiana,* 504 U.S. 71, 80, 112 S.Ct. 1780, 118 L.Ed.2d 437 (1992) ("Freedom from bodily restraint has always been at the core of the liberty protected by the Due Process Clause from arbitrary governmental action."). If illegal aliens enjoy such a right, petitioners, as legal aliens, most certainly do.

## 2. What is the Correct Standard of Review for a Statute that Infringes on Petitioners' Substantive Due Process Rights?

■ Petitioners argue that the Court should apply the heightened level of scrutiny articulated in *United States v. Salerno*, 481 U.S. 739, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). That test asks whether the governmental restriction is "excessive" in relation to its purpose. *See id.* at 747, 107 S.Ct. 2095.[5] By contrast, respondent contends that the Court's review of § 236(c) must be deferential, in large part because Congress has plenary power over immigration matters. For the reasons stated below, the Court finds that the *Salerno* test controls.

■ It is well established that Congress has "broad power over immigration and naturalization," pursuant to which it may promulgate rules for aliens "that would be unacceptable if applied to citizens." *Fiallo v. Bell*, 430 U.S. 787, 792, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977) (quoting *Mathews v. Diaz*, 426 U.S. 67, 80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976)). As the Supreme has observed, " 'over no conceivable subject is the legislative power of Congress more complete than it is over' the admission of aliens." *Id.* (quoting *Oceanic Steam Navigation Co. v. Stranahan*, 214 U.S. 320, 339, 29 S.Ct. 671, 53 L.Ed. 1013 (1909)).

There is a distinction between Congress' power over substantive immigration laws and its power to legislate rules implementing or enforcing those laws, however. Congress' broad authority over immigration has traditionally extended to decisions about what classes of aliens are admissible and deportable and under what circumstances. *See, e.g., Fiallo*, 430 U.S. at 792, 97 S.Ct. 1473 (Congress has plenary power over *admission* of aliens). Thus, it has been said that "the power to *expel or exclude* aliens ... [is] largely immune from judicial control," *Shaughnessy v. U.S.*

*ex rel. Mezei*, 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (emphasis added); that Congress has "exceptionally broad power to determine which classes of aliens may lawfully *enter* the country," *Fiallo*, 430 U.S. at 794, 97 S.Ct. 1473 (emphasis added); and that Congress has a "sovereign right to determine what noncitizens shall be permitted to *remain within* our borders." *Carlson v. Landon*, 342 U.S. 524, 534, 72 S.Ct. 525, 96 L.Ed. 547 (1952) (emphasis added). This case presents a different issue: whether Congress's power *to detain* aliens pending deportation proceedings without any possibility of release on bond is insulated from meaningful judicial review.

The Supreme Court has acknowledged the distinction between "policy" or "political" decisions about the admissibility or deportability of aliens—decisions falling within the province of the legislative and executive branches—and the implementation or enforcement of these decisions, in which the government "must respect the procedural safeguards of due process." *Fiallo*, 430 U.S. at 792 n. 4, 97 S.Ct. 1473. In *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), for example, the Supreme Court considered a challenge to the constitutionality of INA § 244(c)(2), which gave Congress a one-House veto power over decisions by the Attorney General to terminate deportation proceedings against aliens. Although it acknowledged the "plenary power of Congress over aliens," the Court correctly observed that "what is challenged here is whether Congress has chosen a constitutionally permissible means of implementing that power." *Id.* at 940–41, 103 S.Ct. 2764. That choice was subject to due process review.

Like the statute in *Chadha*, § 236(c) triggers heightened review because it does not reflect a substantive decision over immigration policy, but rather a means for effectuating such a decision. Although Congress has broad authority to decide

**5.** In *Salerno,* the Supreme Court employed a two-prong test to determine whether pretrial

detention of criminal defendants constituted excessive punishment.

what classes of aliens should be deported, the same is not true of *how* those aliens are treated pending deportation. Like all rules affecting fundamental rights, rules falling in the latter category must comport with due process. *Salerno* therefore controls.

There are at least two counter arguments to this position, neither of which is persuasive. The first is that detention is a necessary corollary of deportation. Because judicial review over deportation is limited, the argument goes, so is it limited over detention. In *Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the Court used this rationale to apply deferential review to the Attorney General's denial of bail to aliens with a history of Communist activity. The Attorney General's decision was supported by a finding by the district court that aliens who harbored a "philosophy of violence against this Government" would hurt the United States if they were set free pending their deportation hearings. *See id.* at 542, 72 S.Ct. 525.

The facts of *Carlson* are readily distinguishable from those here. Unlike § 236(c), which imposes a blanket prohibition on bail, the statute in *Carlson* afforded opportunities for individualized bond determinations. As the Court acknowledged, "[o]f course purpose to injure [the United States] could not be imputed generally to all aliens subject to deportation." *Id.* at 538, 72 S.Ct. 525. But this is effectively what § 236(c) does.[6]

The second counter argument is that § 236(c) itself reflects a substantive, "policy" decision to deny bond wholesale in order to protect society and enforce substantive immigration laws. Because Congress has plenary authority over policy matters, the argument goes, the Court's review of § 236(c) should be deferential.

This argument, too, is unpersuasive. In *Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), the petitioners challenged sections of the Immigration and Nationality Act on the ground that it conferred preferential status to the relationship of illegitimate children with their natural mothers but not with their natural fathers. The Court found that this distinction was supported by a deliberate "policy" choice to protect one relationship over the other. *Id.* at 797, 97 S.Ct. 1473. The Court acknowledged Congress' wide latitude to make similar determinations—for example, that alien children cannot qualify for preferential status if they are married or are over 21 years of age; that legitimated alien children are ineligible for preferential status unless their legitimation occurred before their 18th birthday; or that adopted alien children are not entitled to preferential status unless they were adopted before the age of 14 and have lived with their adopted parents for at least two years thereafter. *Id.* at 798, 97 S.Ct. 1473 (citing 8 U.S.C. § 1101(b)(1), 1101(b)(1)(C), 1101(b)(1)(E)). These "policy questions" were characterized as essentially matters of line drawing regarding what entitlements should be conferred, and what should be withheld. *See id.* at 798, 97 S.Ct. 1473 ("With respect to each of these legislative policy decisions, it could be argued that the line should have been drawn at a different point.")

Section 236(c) has little to do with the distribution of entitlements to aliens and far more to do with the deprivation of fundamental liberty interests. Mandatory detention with no possibility of bond is not a simple "line drawing" or policy decision that a system of ordered liberty can entrust solely to the political branches of government. It is only ancillary to substantive immigration policy and, as such, does not escape searching judicial review. For these reasons, the deference accorded to substantive immigration decisions does not automatically extend to rules implementing or enforcing those decisions.

---

**6.** Similarly, in *Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114, the district court held that the greater power to deport includes the lesser power to detain. *Id.* at 1119. Nonetheless, it applied the *Salerno* heightened scrutiny test to review the very same statute at issue here.

Because aliens have a substantive due process right to freedom from arbitrary detention and because § 236(c) curtails that freedom, the conclusion remains unchanged: *Salerno* applies.

Finally, respondent argues that *Salerno* is a criminal case that can have no application in deportation proceedings, which are essentially civil. Criminal defendants enjoy numerous procedural safeguards to which aliens are not entitled, such as the presumption of innocence and the right to a speedy trial. In this vein, it has been said that an alien's liberty interest is "significantly more qualified" than that of a criminal defendant. *Doherty*, 943 F.2d at 210.

Nonetheless, the fundamental right to be free from bodily restraint is not reserved exclusively for citizens; rather, "all persons within the territory of the United States are entitled to the protection guaranteed by [the Fifth and Sixth] amendments." *Wong Wing v. United States*, 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896); *see also Harisiades v. Shaughnessy*, 342 U.S. 580, 586 & 587 n. 9, 72 S.Ct. 512, 96 L.Ed. 586 (1952) (immigrants stand "on an equal footing with citizens" under the Constitution with respect to protection of personal liberty). It strains the imagination that individuals detained because of criminal activity should have more rights than those held simply for regulatory purposes.

Moreover, courts reviewing § 236(c) have applied the *Salerno* test either to uphold the statute, *see Diaz–Zaldierna*, 43 F.Supp.2d 1114 (S.D.Cal.1999), or declare it unconstitutional. *See* Van Eeton v. Beebe, 49 F.Supp.2d 1186 (D.Or.1999); *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998). In addition, those courts that have declined to apply *Salerno* have done so for reasons other than the fact that *Salerno* was a criminal case.

### 3. Does § 236(c) Survive the *Salerno* Heightened Scrutiny Test?

■ The *Salerno* test asks whether the governmental restriction is "excessive" in relation to its purpose. *Salerno*, 481 U.S. at 747, 107 S.Ct. 2095. The government has advanced a four-fold purpose to § 236(c): (a) to prevent flight; (b) to protect the public from "potentially dangerous" criminal aliens; (c) to correct the failure of prior bond procedures, under which more than twenty percent of criminal aliens absconded before their deportation hearings; and (d) to repair the "serious damage to the American immigration system caused by the Government's inability to detain criminal aliens pending deportation and remove them properly." Government's Response at 14 (citing S.Rep. No. 48, 104th Cong., 1st Sess. (1995 WL 170285) at 1–6, 9, 18–23).

As applied to petitioners, § 236(c)'s indiscriminate denial of bond is "excessive" in relation to each of these purposes. Petitioners have resided in this country lawfully since 1983. Application at 3. They have seven children aged 8 to 22 years whom they care and provide for. *Amicus Curiae* Brief of the A.C.L.U. ("Amicus Brief") at 20. Four of these children are native-born U.S. citizens. Application at 3. The Court finds that these ties make petitioners extremely unlikely flight risks. Furthermore, petitioners were not convicted of a violent crime or an offense with attendant dangers, such as drug use. To the Court's knowledge, petitioners have not—until recently—had any trouble with the law. Amicus Brief at 19. There is no evidence that petitioners' release would pose a threat to public safety. Finally, there are ways to rectify the problem of aliens absconding before deportation that do not implicate petitioners' right to freedom from arbitrary detention. In view of these considerations, § 236(c) is plainly "excessive" under *Salerno*.

This conclusion is supported by the case law. The cases cited by the parties involve statutes that fall into one of three broad categories: (1) those that pertain to pure policy matters or substantive immigration

rules; (2) those that confer discretion on the Attorney General to release the petitioner on bond; and (3) those, like § 236(c), that categorically deny bond. The first two classes of cases are distinguishable. As discussed above, § 236(c) does not fall within Congress' plenary power over immigration laws because it relates to the treatment of aliens in the course of enforcing or implementing those laws. Cases applying rationality review to substantive immigration decisions—for example, the decision to confer preferential status to the relationship of an illegitimate child with his natural mother but not with his natural father, *see Fiallo v. Bell,* 430 U.S. 787, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977), or the decision to impose a two year nonresidency requirement on aliens who marry U.S. citizens during deportation proceedings, *see Anetekhai v. INS,* 876 F.2d 1218 (5th Cir.1989)—are therefore inapposite.

The second class of cases applies deferential review to statutes that vest discretion in the Attorney General to grant bond. In these cases, the alien received an individualized determination of his or her suitability for release on bond; the decision to deny bond was reviewed for abuse of discretion and was typically upheld. *See, e.g., Carlson v. Landon,* 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *Doherty v. Thornburgh,* 943 F.2d 204 (2d Cir.1991). These cases are also distinguishable from the instant case. Under an abuse of discretion standard, the Attorney General's decision to deny bond can always be reversed if it is arbitrary or erroneous. By contrast, § 236(c) provides no such "safety valve" to protect individuals in petitioners' position. Petitioners moreover do not oppose limited judicial review over individualized bond determinations; they challenge only the blanket denial of bond.

The third class of cases—those involving statutes like § 236(c) that categorically denies release on bond—is most relevant to the case at bar. Of these cases, two applied the *Salerno* heightened a scrutiny test to § 236(c) and concluded that the statute failed that test.[7] One applied the *Salerno* test to reach the opposite conclusion—that § 236(c) passed constitutional muster. *See Diaz–Zaldierna v. Fasano,* 43 F.Supp.2d 1114 (S.D.Cal.1999). *Diaz–Zaldierna,* however, is distinguishable on the facts. There, the petitioner had been convicted for possession of crack cocaine and had served a 135–day jail sentence before being detained by the INS. The Court concluded that § 236(c) was not excessive because (a) controlled substance offenders pose a significant threat to society's health and welfare, and (b) Congress excluded minor drug offenders from the scope of § 236(c)'s mandatory detention, suggesting that it did not "mindlessly incorporate all drug crimes irrespective of the dangerousness that the offense reflects." *Id.* at 1120; *see* 8 U.S.C. § 1227(a)(2)(B)(i) (excepting "a single offense involving possession for one's own use of 30 grams or less of marijuana"). In sharp contrast to the petitioner in *Diaz–Zaldierna,* petitioners here were not convicted of drug related offenses, and § 236(c) does not otherwise differentiate between low and high flight risk detainees or between detainees who are dangerous to society and those who are not. It is not inconsistent to endorse the outcome in *Diaz–Zaldierna* and yet find that § 236(c) is "excessive" *as applied* to the facts here.

Still a fourth case upheld § 236(c) based on a purely deferential standard of review.

7. *See, e.g., Van Eeton v. Beebe,* 49 F.Supp.2d 1186 (D.Or.1999) ("Denying individual bond hearings 'imputes a purpose to injure society to all detained aliens with aggravated felony convictions'.... Individualized bond hearings ... would serve the government interest without violating due process rights."); *Martinez v. Greene,* 28 F.Supp.2d 1275, 1282 (1998)

("Section 236(c) removes all discretion from the Attorney General with respect to detention versus bond. I conclude mandatory detention for all persons covered by § 236(c) is not narrowly tailored .... [and is] plainly 'excessive in relation to the regulatory goal Congress sought to achieve.' ").

*See Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999). Like *Diaz–Zaldierna, Parra,* too, is distinguishable. The question in *Parra* was whether an alien (a) convicted of criminal sexual assault and who (b) did not contest his deportability had a constitutional right to remain at home until his deportation order became final. Finding that the petitioner had conceded no "legal right to remain in the United States" and was simply "postponing the inevitable," *id.* at 958, the Seventh Circuit answered that question in the negative.

By contrast, petitioners vigorously challenge their deportability, both on the ground that they were not convicted of an "aggravated felony" within the meaning of § 236(c), and that deportation would be futile because Vietnam refuses to take back citizens who have resided in the United States. More importantly, petitioners do not assert an absolute entitlement to be released pending deportation proceedings, but only the modest right to an individualized bond determination regarding whether release pending deportation is appropriate. In this context, there is no cogent reason to follow *Parra*'s deferential posture.

Respondent relies heavily on the case of *Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), to vindicate its position. In that case, a class of alien juveniles awaiting deportation proceedings challenged a statute pursuant to which they were held in child care facilities and could only be released to a parent, close relative, or legal guardian. Petitioners, who had no parent, close relative, or guardian, asserted a right to be placed in the custody of a responsible and willing adult rather than a government-operated child care facility. In the alternative, they claimed a right to an individualized determination as to whether it was in their best interests to remain in custody or be released to a private custodian.

The Court applied rationality review to uphold the statute. It reached this conclusion because (a) petitioners were juveniles who, "unlike adults, are always in some form of custody"; (b) "freedom from physical restraint ... is not at issue in this case"; and (c) the statute served the purposes of "preserving and promoting the welfare of the child." *Id.* at 302–03, 113 S.Ct. 1439.

These considerations do not obtain here. First, petitioners Nhoc Danh and Uong Ly are adults. Second, the juveniles in *Flores* were housed in facilities meeting "state licensing requirements for shelter care, foster care, group care, and related services to dependent children." *Id.* at 298, 113 S.Ct. 1439. These were not correctional institutions but rather low security facilities that provided physical care and maintenance, counseling, education, recreation, family reunification services, and access to religious services, visitors, and legal assistance. *Id.* This is partly why the *Flores* Court found that freedom from physical restraint was "not at issue." [8] *Id.* at 302, 113 S.Ct. 1439. By contrast, petitioners are being held in county detention centers, presumably together with convicted felons. The right at stake here is freedom from arbitrary physical detention; the right asserted in *Flores* was the right to be placed in the custody of a willing and able non-relative custodian rather than in "a decent and humane custodial institution ." [9] *Id.* at 303, 113 S.Ct. 1439. Third, the *Flores* Court applied rationality review

**8.** The other reason was that petitioners were juveniles who, unlike adults, have a lesser interest in freedom from custody. *Id.* at 302, 113 S.Ct. 1439.

**9.** The Court found no such substantive due process right in part because it feared the implications the opposite result would have for abandoned children seeking release from

state orphanages and other child care institutions. *See id.* Furthermore, because children are always in some form of custody, there was no constitutional need for an individualized hearing to determine whether one form of custody would be better than another, so long as both forms met certain minimum standards. *See id.* at 305, 113 S.Ct. 1439.

**1004**

because the government's interest was aligned with that of the juveniles. Moreover, the interest in "protecting the welfare of juveniles who have come into [the government's] custody" outweighed the juveniles' interest in being released to "strangers." *Id.* at 305, 113 S.Ct. 1439. The converse is true here: petitioners' fundamental right to freedom from arbitrary detention outweighs respondent's concern that petitioners will present a flight risk or a danger to society.

Cases that reach the result advocated by respondent are therefore distinguishable on the facts from the case at bar. By contrast, at least two district courts that have considered the identical statute have applied the *Salerno* standard to find it unconstitutional. For all the reasons set forth above, the Court finds that § 236(c) fails the *Salerno* test and violates petitioners' substantive due process rights.

**D. Procedural Due Process**

■ Because the Court concludes that petitioners' substantive due process rights were violated, it is strictly unnecessary to determine whether their procedural due process rights were also compromised. Only when a restriction on liberty survives substantive due process scrutiny does the further question of whether the restriction is implemented in a procedurally fair manner become ripe for consideration. *See United States v. Salerno*, 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987). Nonetheless, the Court considers petitioners' procedural due process claim in the event it later determined that § 236(c) withstands substantive due process scrutiny.

■ To determine whether a statute or governmental conduct satisfies procedural due process, courts must balance the following factors: (1) the private interest affected by the official action; (2) the risk of an erroneous deprivation of the interest; (3) the probable value of additional or substitute procedural safeguards; and (4) the government's interest, including the fiscal and administrative burdens that additional or substitute procedures would entail. *Mathews v. Eldridge*, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

By now it is well established that legal aliens are entitled to due process under *Mathews.* "Permanent resident aliens are protected by the Due Process Clause of the Fifth Amendment." *Richardson v. Reno*, 162 F.3d 1338, 1362 (11th Cir.1998). *See also Landon v. Plasencia*, 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (applying the *Mathews* test to a permanent resident alien who was denied readmission into this country while attempting to smuggle illegal aliens from Mexico). Numerous courts have applied *Mathews* to review mandatory immigration detention statutes such as § 236(c). See, e.g., *Van Eeton v. Beebe*, 49 F.Supp.2d 1186 (D.Or.1999)(permanent resident alien challenging § 236(c)'s blanket denial of bond); *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998) (same); *St. John v. McElroy*, 917 F.Supp. 243, 250 (S.D.N.Y.1996) (permanent resident alien challenging denial of parole pending exclusion). Even the Seventh Circuit case of *Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999), which applied a deferential standard to § 236(c) in the substantive due process context, analyzed the petitioners' procedural due process rights under the *Mathews* factors. Respondent's contention that Congress' plenary power over immigration precludes application of basic fair process norms to lawful resident aliens is therefore untenable.

■ Under *Mathews*, a statute such as § 236(c) that denies even the possibility of bond can scarcely claim constitutional sanction. The interest at stake here is fundamental to any democratic society: the right to freedom from arbitrary detention. Because petitioners' continued detention is unlikely to further any of the asserted purposes behind § 236(c), the risk of an erroneous deprivation of that interest is acute. Respondent could easily avoid

these problems by affording individuals in petitioners' situation an individualized bond hearing. The additional burden of such a hearing to the overall deportation process—a process that may take months or even years—is slight compared to the rights at stake. Indeed, release on bond may actually serve the government's interest by freeing up unnecessary jail space.

"A fundamental requirement of due process is 'the opportunity to be heard' .... at a meaningful time and in a meaningful manner." *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). The prior bond determination hearing before the IJ afforded petitioners no opportunity to be heard regarding their dangerousness or flight risk. Petitioners are therefore entitled to an individualized bond hearing before the IJ.

For these reasons, even if § 236(c) does not violate petitioners' substantive due process rights, it deprives them of procedural due process.

### CONCLUSION

For the foregoing reasons, petitioners' application pursuant to 28 U.S.C. § 2241 for a writ of habeas corpus is GRANTED. The Court's April 9, 1999 Order is VACATED. The judgment entered April 9, 1999 in favor of respondent and against petitioners is VACATED.

It is FURTHER ORDERED that:

(1) the Immigration Judge shall hold an individualized hearing within *two (2) business days* to determine whether petitioners' release on bond would pose a flight risk or a danger to society;

(2) petitioners are awarded costs, but the request for attorneys' fees is DENIED.

SO ORDERED.