Abdul **SHURNEY**, Petitioner,

v.

**IMMIGRATION & NATURALIZATION SERVICE, et al., Respondents.**

No. 1:01CV1906.

United States District Court,
N.D. Ohio,
Eastern Division.

Nov. 9, 2001.

Scott E. Bratton, Law Office of Margaret W. Wong, Cleveland, OH, for petitioner.

Michael Anne Johnson, Office of U.S. Atty., Cleveland, OH, for respondents.

## MEMORANDUM & ORDER

O'MALLEY, District Judge.

The Petitioner, Abdul Shurney, a noncitizen, has been a legal permanent resident of the United States for the last twenty-three years. The Immigration and Naturalization Service ("INS") has instituted removal proceedings against Shurney, contending that he has been convicted of two controlled substances offenses and is therefore an aggravated felon within the meaning of the immigration laws. Shurney is being detained without the opportunity for bond during the pendency of his removal proceedings.

Shurney filed a petition for a writ of habeas corpus, pursuant to 22 U.S.C. § 2241, arguing that his mandatory detention without the possibility of bond violates his substantive and procedural due process rights. Respondents: the INS; John Ashcroft, Attorney General of the United States; Mark Hansen, District Director of the INS; and Kevin Rooney, Acting Commissioner of the INS (collectively, the "Government"), moved to dismiss the petition for failure to state a claim for relief. For the reasons discussed below, the Court finds that Shurney's as-applied procedural due process challenge is well-taken. Therefore, Respondent's Motion to Dismiss is **DENIED** and Petitioner's Emergency Petition for Writ of Habeas Corpus is **GRANTED**.

## I. Facts and Procedural Background

Abdul Shurney, a native and citizen of the Republic of South Africa, came to the United States as an immigrant in 1978 when he was three years old. He has resided in the United States since that date and is a legal permanent resident. In addition to residing in this country for twenty-three years, he has also married while living here.

On April 16, 2001, Shurney pleaded guilty in the Cuyahoga County Court of Common Pleas to attempted possession of less than five grams of crack cocaine, a fourth-degree felony, and received a two-year term of probation. Less than three months later, on July 5, 2001 the Immigration and Naturalization Service ("INS") issued a Notice to Appear, charging that Shurney was subject to removal from the United States under 8 U.S.C. § 1227(a)(2)(B)(i) because he had been convicted of a controlled substance violation, as defined in 21 U.S.C. § 802. Having only one conviction for drug possession made Shurney eligible under 8 U.S.C. § 1229b(a) to petition the Attorney General to cancel his removal proceedings.

On September 19, 2001, at a hearing before an Immigration Judge on his petition for cancellation, Shurney admitted that, in addition to the 2001 conviction, he

also had a minor misdemeanor conviction in 1995 for possession of marijuana. The Immigration Judge found that Shurney had been convicted of two drug offenses, rendering him an aggravated felon under 8 U.S.C. § 1101(a)(43)(B), making him ineligible for cancellation of removal and subject to automatic deportation.

The determination that Shurney was an aggravated felon within the meaning of the Immigration and Nationality Act involves multiple steps. Section 1101(a)(43)(B) of Title 8 defines aggravated felonies to include "illicit trafficking of a controlled substance (as defined in section 802 of Title 21), including a drug trafficking crime (as defined in section 924(c) of Title 18)." Section 924(c)(2) of Title 18 defines drug trafficking crimes to include "any felony punishable under the Controlled Substances Act (21 U.S.C. 801 et seq.)." Felony offenses under the Controlled Substances Act include drug-related offenses punishable by imprisonment for more than one year under any federal law. 21 U.S.C. § 802(44). While a first-time conviction for simple possession (or attempted possession) is only a misdemeanor, a violation after a prior conviction for "any drug, narcotic, or chemical, offense chargeable under the law of any State" raises the maximum prison time to two years and makes the violation a felony. 21 U.S.C. § 844(a).

Thus, Shurney allegedly qualifies as an aggravated felon because his 2001 attempted drug possession conviction, though originally punishable as simple possession under § 844(a) of the Controlled Substances Act, would have been enhanced to a felony conviction by virtue of his prior minor misdemeanor drug possession conviction. Because Shurney was classified as an aggravated felon, the Immigration Judge found he was not eligible for cancellation

of his removal under § 1229b(a) and ordered his removal from the United States to South Africa.

Until Shurney's removal order becomes final,[1] the government contends that 8 U.S.C. § 1226(c) prevents the Attorney General from releasing him; they claim that Shurney is not entitled to a hearing to determine if he could be released on bond during the pendency of this process. On August 6, 2001, Shurney filed a petition for a writ of habeas corpus, seeking a declaration that 8 U.S.C. § 1226(c) is unconstitutional and an order requiring the INS to conduct a bond hearing. Specifically, Shurney raises both facial and as-applied challenges, alleging violations of his substantive and procedural due process rights.

## II. Jurisdiction of the Court

■ As an initial matter, this Court must determine if it has jurisdiction over Shurney's petition. *Steel Co. v. Citizens for a Better Environ.*, 523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). Although both parties assert jurisdiction exists, the Court must conduct its own, independent review. *Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977). A writ of habeas corpus maybe issued when a prisoner is "in custody in violation of the Constitution or law or treaties of the United States." 28 U.S.C. §§ 2241(c)(3), 2245(a). First, the Court must determine whether habeas review is precluded by the Immigration and Nationality Act ("INA"). Second, the Court must determine whether petitioner has exhausted his administrative remedies, and, if he has not, whether that failure prohibits the Court from addressing his constitutional claims.

---

1. Removal orders do not become final until the Board of Immigration Appeals affirms the order or the period in which the alien can file his appeal expires. 8 U.S.C. § 1101(47)(B).

## A. Habeas Review Not Precluded by the INA

 Shurney does not seek review of the Attorney General's decision to commence proceedings against him, to adjudicate his case, or to execute his removal order. Instead, he seeks review of the constitutionality of the statute which dictates his detention during the INS proceedings and prohibits any request for a bond. Two specific statutory provisions within the INA are relevant to this analysis. *See Marogi v. Jenifer,* 126 F.Supp.2d 1056, 1058–59 (E.D.Mich.2000).

Section 1252(g) of Title 8 deprives courts of jurisdiction "to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter." The Supreme Court has construed this preclusion clause narrowly to encompass only the three specific situations listed. *Reno v. American–Arab Anti–Discrimination Comm.,* 525 U.S. 471, 482–87, 119 S.Ct. 936, 142 L.Ed.2d 940 (1999). As Shurney is not challenging any of the enumerated decisions or actions, § 1252(g) does not foreclose habeas review of his claims.

Section 1226(e) of Title 8 prevents judicial review of discretionary decisions by the Attorney General under the INA.

The Attorney General's discretionary judgment regarding the application of this section shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole. 8 U.S.C. § 1226(e). Like the previous statutory provision, this section only constrains judicial review of operational decisions by the Attorney General, rather than the statutory construct under which the Attorney General operates. *Parra v. Perryman,* 172 F.3d 954, 957 (7th Cir.1999). As Shurney is not seeking review of any decisions made by the Attorney General and is, instead, directly challenging the constitutionality of 8 U.S.C. § 1226(c) itself, § 1226(e) does not foreclose habeas review.

Thus, the Court finds that neither 8 U.S.C. § 1252(g) nor 8 U.S.C. § 1226(e) prevent habeas review. Indeed, the overwhelming majority of courts have reached this same conclusion. *See, e.g., Parra v. Perryman,* 172 F.3d 954 (7th Cir.1999); *Marogi v. Jenifer,* 126 F.Supp.2d 1056 (E.D.Mich.2000); *Zgombic v. Farquharson,* 89 F.Supp.2d 220 (D.Conn.2000); *Reyes v. Underdown,* 73 F.Supp.2d 653 (W.D.La.1999); *Galvez v. Lewis,* 56 F.Supp.2d 637 (E.D.Va.1999); *Danh v. Demore,* 59 F.Supp.2d 994 (N.D.Cal.1999); *Martinez v. Greene,* 28 F.Supp.2d 1275 (D.Colo.1998).

## B. Administrative Exhaustion Not Required for Habeas Review

 Generally, exhaustion of all available administrative remedies is required before administrative determinations may be subject to federal judicial review. *McCarthy v. Madigan,* 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). When Congress fails to specifically mandate that exhaustion is required before a party may seek federal judicial review, the need for exhaustion in any given case is left to the sound discretion of the Court. *Id.* at 144, 112 S.Ct. 1081. In such circumstances, the Court "must balance the interest of the individual in retaining prompt access to a federal judicial forum against countervailing institutional interests favoring exhaustion." *Id.* Under the INA, exhaustion of administrative remedies is only required for appeals of final orders of removal. 8 U.S.C. § 1252(d)(1). Since

Shurney is challenging the constitutionality of the statute, and not a final order of removal, the Court has discretion to determine whether exhaustion should be required in this case.

The Supreme Court has recognized three "broad sets of circumstances in which the interests of an individual weigh heavily against requiring administrative exhaustion": (1) where such requirement would subject an individual to an unreasonable or indefinite time frame for administrative action, (2) where the administrative agency lacks the competence to resolve the particular issue presented, or (3) the exhaustion of administrative remedies would be futile because the administrative body is shown to be biased or has pre-determined the issue before it. *McCarthy,* 503 U.S. at 146–48, 112 S.Ct. 1081.

■ While administrative agencies can consider constitutional claims, they lack the authority to dispositively deal with these issues, as final authority on these matters rests with the courts. *Id.* at 147–48, 112 S.Ct. 1081. Indeed, the Board of Immigration Appeals ("BIA") has expressly found that it lacks authority to determine the constitutionality of the mandatory detention provisions of 8 U.S.C. § 1226(c). *In re Joseph,* Int.Dec. 3387 at 6 (BIA 1999) ("We note that it is not within the purview of this Board to pass upon the constitutionality of the mandatory detention provision in section 236(c)(1)."). In these circumstances, it would be futile to require Shurney to pursue admittedly ineffective administrative relief. *See, e.g., Yanez v. Holder,* 149 F.Supp.2d 485 (N.D.Ill. 2001); *Danesh v. Jenifer,* 2001 WL 558233, No. 00–CV–74409–DT (E.D.Mich.2001); *Marogi v. Jenifer,* 126 F.Supp.2d 1056 (E.D.Mich.2000); *Welch v. Reno,* 101 F.Supp.2d 347 (D.Md.2000); *Alikhani v. Fasano,* 70 F.Supp.2d 1124 (S.D.Cal.1999);

*Galvez v. Lewis,* 56 F.Supp.2d 637 (E.D.Va.1999).

Having found that the Court has jurisdiction to hear Shurney's habeas petition and that further resort to administrative avenues of relief is unnecessary, the Court now turns to the substance of Shurney's petition.

## III. Shurney's Due Process Claims

Shurney asserts that his substantive and procedural due process rights have been violated, and he brings both facial and as-applied challenges to 8 U.S.C. § 1226(c).

### A. Due Process Rights Under the Fifth Amendment

■ The Due Process Clause of the Fifth Amendment to the United States Constitution guarantees that "[n]o person shall ... be deprived of life, liberty, or property, without due process of law." U.S. Const. amend. V. "Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas v. Davis,* 533 U.S. 678, 121 S.Ct. 2491, 2498, 150 L.Ed.2d 653 (2001)

■ The due process protections of the Fifth Amendment extend to "all persons within the territory of the United States ... and ... even aliens shall not be ... deprived of life, liberty, or property without due process of law." *Wong Wing v. United States,* 163 U.S. 228, 238, 16 S.Ct. 977, 41 L.Ed. 140 (1896); *see also Zadvydas,* 121 S.Ct. at 2500 ("[T]he Due Process Clause applies to all 'persons' within the United States, including aliens, whether their presence here is lawful, unlawful, temporary, or permanent."); *Reno v. Flores,* 507 U.S. 292, 306, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993) ("It is well established that the Fifth Amendment entitles

aliens to due process of law in deportation proceedings."); *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) ("[O]nce an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes accordingly."). Thus, lawful permanent resident aliens like Shurney are entitled to the same due process protections as citizens of the United States. The nature of that protection, however, may vary depending on the alien's status and circumstances. *Zadvydas,* 121 S.Ct. at 2501; *Landon,* 459 U.S. at 32–34, 103 S.Ct. 321.

 The Due Process Clause of the Fifth Amendment encompasses both a substantive and procedural right to due process. The substantive due process component precludes the government from engaging in conduct that "shocks the conscience," *Rochin v. California,* 342 U.S. 165, 172, 72 S.Ct. 205, 96 L.Ed. 183 (1952), or interferes with rights "implicit in the concept of ordered liberty," *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Substantive due process protects an alien from government infringement upon certain "fundamental liberty interests at all, no matter what process is provided, unless the infringement is narrowly tailored to serve a compelling state interest." *Flores,* 507 U.S. at 302, 113 S.Ct. 1439. The procedural due process component, on the other hand, places constraints on the manner in which the government can deprive individuals of life, liberty, or property by prohibiting the government from depriving individuals in an unfair manner. *United States v. Salerno,* 481 U.S. 739, 746, 107 S.Ct. 2095, 95 L.Ed.2d 697 (1987); *Mathews v. Eldridge,* 424 U.S. 319, 333–35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). "[D]ue process is flexible and calls for such procedural protec-

tions as the particular situation demands." *Mathews,* 424 U.S. at 321.

## B. Challenges to § 1226(c) Generally

 To sustain a facial due process challenge, Shurney must demonstrate that the challenged statute is unconstitutional in all circumstances. *Salerno,* 481 U.S. at 745, 107 S.Ct. 2095. In evaluating a facial challenge to the Bail Reform Act, the Supreme Court noted that:

A facial challenge to a legislative Act is, of course, the most difficult challenge to mount successfully, since the challenger must establish that no set of circumstances exists under which the Act would be valid. The fact that the Bail Reform Act might operate unconstitutionally under some conceivable set of circumstances is insufficient to render it wholly invalid, since we have not recognized an "overbreadth" doctrine outside the limited context of the First Amendment.

*Id.* As the Supreme Court notes, Shurney bears a "heavy burden" to demonstrate that § 1226(c) is "facially" unconstitutional. *Id.* Under an "as-applied" challenge, however, Shurney must only demonstrate that the challenged statute is unconstitutional as-applied to him. *Danh v. Demore,* 59 F.Supp.2d 994, 998 (N.D.Cal.1999).

While neither the Supreme Court nor the Sixth Circuit has yet addressed the constitutionality of 8 U.S.C. § 1226(c), lower courts have done so with increasing frequency. A review of these cases reveals a significant split has emerged among district courts over the constitutionality of § 1226(c). Thus, while numerous district courts have found that the mandatory detention of aliens without bond under § 1226(c) violates an alien's right to due process and is, therefore, un-

constitutional,[2] either facially or as applied, an equal number of district courts have reached the opposite conclusion.[3]

In the face of this split of district court authority, only one Circuit Court has addressed the issue. In *Parra v. Perryman*, 172 F.3d 954 (7th Cir.1999), the Seventh Circuit found that at least where the propriety of the Attorney General's removal order is undisputed, § 1226(c) can be constitutionally applied. Thus, the Seventh Circuit held that a facial challenge to the constitutionality of § 1226(c) can never be mounted and that an as-applied challenge was unavailable to the petitioner before it because that petitioner conceded the inevitability of his removal under the law.

After considering these varying views on this issue, the Court concludes, for the reasons discussed below, that where, as here, a petitioner has a good faith basis to contest his removal from the United States, detention without any opportunity for bond is unconstitutional.

## C. As–Applied Procedural Due Process Challenge to § 1226(c)

■ The nature and extent of the process due in any given circumstance is governed by three factors: (1) the private interest affected by the official action; (2) the risk of erroneous deprivation of the interest, and the value, if any, of additional or substitute procedural safeguards; and (3) the government's interest, including the fiscal and administrative burdens the additional or substitute procedural requirements would impose. *Mathews*, 424 U.S. at 335, 96 S.Ct. 893.

A review of the cases addressing the constitutionality of § 1226(c) reveals that the outcome of an alien's due process challenge substantially turns on the manner in which the *Mathews* test is applied, primarily on the way in which the private interest at stake is defined. Those Courts finding the private interest to be significant have inevitably found the alien's due process challenge well-taken, while those Courts

---

**2.** See *Luu v. Demore*, 2001 WL 1006787, No. C011130MMC (N.D.Cal. Aug. 23, 2001); *Perez v. Demore*, 2001 WL 1042133, No. C 00–4628 CRB (N.D.Cal. Aug. 21, 2001); *Vang v. Ashcroft*, 149 F.Supp.2d 1027 (N.D.Ill.2001); *Danesh v. Jenifer*, 2001 WL 558233, No. 00–CV–74409–DT (E.D.Mich. Mar. 27, 2001); *Cardoso v. Reno*, 127 F.Supp.2d 106 (D.Conn. 2001); *Radoncic v. Zemski*, 121 F.Supp.2d 814 (E.D.Pa.2000); *Juarez–Vasquez v. Holmes*, 2000 WL 1705775, 2000 U.S.Dist.LEXIS 16417, No. 00–CV–4727 (E.D.Pa. Nov. 3, 2000); *Koita v. Reno*, 113 F.Supp.2d 737 (M.D.Pa.2000); *Son Vo v. Greene*, 109 F.Supp.2d 1281 (D.Colo.2000); *Welch v. Reno*, 101 F.Supp.2d 347 (D.Md.2000); *Chukwuezi v. Reno*, 2000 WL 1372883, 2000 U.S.Dist.LEXIS 15432, No. 3:CV–99–2020 (M.D.Pa. May 16, 2000); *Zgombic v. Farquharson*, 89 F.Supp.2d 220 (D.Conn.2000); *Bouayad v. Holmes*, 74 F.Supp.2d 471 (E.D.Pa.1999); *Rogowski v. Reno*, 94 F.Supp.2d 177 (D.Conn.1999); *Kim v. Schiltgen*, 1999 U.S.Dist.LEXIS 12511, No. C 99–2257 SI (N.D.Cal. Aug. 10, 1999); *Danh v.*

*Demore*, 59 F.Supp.2d 994 (N.D.Cal.1999); *Van Eeton v. Beebe*, 49 F.Supp.2d 1186 (D.Or. 1999); *Martinez v. Greene*, 28 F.Supp.2d 1275 (D.Colo.1998).

**3.** See *Yanez v. Holder*, 149 F.Supp.2d 485 (N.D.Ill.2001); *Kwon v. Comfort*, 174 F.Supp.2d 1141 (D.Colo.2001); *Patel v. Zemski*, 2001 WL 503431, No. CIV.A. 01–405 (E.D.Pa. May 11, 2001); *Marogi v. Jenifer*, 126 F.Supp.2d 1056 (E.D.Mich.2000); *Lezcano v. Reno*, 2000 WL 1175564, No. C 99–4894 MJJ (N.D.Cal. Aug. 4, 2000); *Kahn v. Perryman*, 2000 WL 1053962, No. 00 C 3398 (N.D.Ill. July 31, 2000); *Avramenkov v. INS*, 99 F.Supp.2d 210 (D.Conn.2000); *Okeke v. Pasquarell*, 80 F.Supp.2d 635 (W.D.Tex.2000); *Reyes v. Underdown*, 73 F.Supp.2d 653 (W.D.La.1999); *Sierra–Tapia v. Reno*, 1999 WL 803898, No. 99–CV–986 TW(RBB) (S.D.Cal. Sept. 30, 1999); *Alikhani v. Fasano*, 70 F.Supp.2d 1124 (S.D.Cal.1999); *Galvez v. Lewis*, 56 F.Supp.2d 637 (E.D.Va.1999); *Diaz–Zaldierna v. Fasano*, 43 F.Supp.2d 1114 (S.D.Cal.1999).

tending to discount the private interest have found otherwise.

These cases can be grouped into two main categories. In the first, a number of Courts have concluded that all aliens under all circumstances have a broad procedural right to be free from indefinite and possibly long-term detention without an individualized bond determination.[4] These Courts have found this procedural right to be fundamental and, therefore, have found § 1226(c) facially unconstitutional. The Courts in the other camp, however, have instead focused on the alien's individual liberty interest, and the decisions of these Courts have generally turned on whether the alien has a good faith basis for objecting to his removal. Where the alien has conceded his removability or the underlying convictions supporting his removability, these Courts have concluded that he has little liberty interest left because he no longer is entitled to remain in the United States.[5] On the other hand, if the alien has a legitimate basis for ultimately avoiding removal, these Courts have concluded that his liberty interest is greater.[6]

Courts construing § 1226(c) have generally found that the second element, the risk of erroneous deprivation and the effect of additional safeguards, turns on the nature of the private interest at stake. Those Courts finding § 1226(c) unconstitutional have concluded that the risk of erroneous deprivation in such circumstances is high, given that *no* procedures exist to determine the threat an alien poses to public safety or the risk he will disappear during the pendency of the removal proceedings. They have also found that the value of a bond hearing would be great in making these determinations. *Perez*, 2001 WL 1042133 at *7; *Danesh*, 2001 WL 558233, at *7; *Zgombic* 89 F.Supp.2d at 236; *Kim*, 1999 U.S.Dist. LEXIS 12511, at *28; *Danh*, 59 F.Supp.2d at 1004–05; *Martinez*, 28 F.Supp.2d at 1283–84. In contrast, Courts finding that the private interest is minimal have concluded that there is no substantial risk of erroneous

---

4. *See Perez v. Demore*, 2001 WL 1042133, No. C 00–4628 CRB, at *7 (N.D.Cal. Aug. 21, 2001); *Danesh v. Jenifer*, 2001 WL 558233, No. 00–CV–74409–DT, at * 7 (E.D.Mich. Mar. 27, 2001); *Kim v. Schiltgen*, 1999 U.S.Dist.LEXIS, No. C 99–2257 SI, at * 28 (N.D.Ill. Aug. 10, 1999); *Danh v. Demore*, 59 F.Supp.2d 994, 1004 (N.D.Cal.1999); *Martinez v. Greene*, 28 F.Supp.2d 1275, 1283 (D.Colo.1998).

5. *See Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir.1999) ("A criminal alien who insists on postponing the inevitable has no constitutional right to remain at large during the ensuing delay.... The private interest here is not liberty in the abstract, but liberty *in the United States* by someone no longer entitled to remain in this country but eligible to live at liberty in his native land."); *Marogi v. Jenifer*, 126 F.Supp.2d 1056, 1066 (E.D.Mich.2000) ("[T]he private interest here is very attenuated: the liberty of one who is no longer entitled to remain in the United States, but eligible to live at liberty elsewhere."); *Avramenkov*

v. INS, 99 F.Supp.2d 210, 216 (D.Conn.2000) ("[B]ecause the Petitioner is almost certainly going to be removed from the country, no significant liberty interest is implicated by § 236(c)"); *Reyes v. Underdown*, 73 F.Supp.2d 653, 658 (W.D.La.1999); *Alikhani v. Fasano*, 70 F.Supp.2d 1124, 1135 (S.D.Cal. 1999) ("[T]he liberty interest of petitioner is very limited. In essence, petitioner asserts the right to be free from detention despite the fact that he is very likely to be deported and despite the fact the he could be free from detention were he to agree to be deported.").

6. *See Vang v. Ashcroft*, 149 F.Supp.2d 1027, 1038 (N.D.Ill.2001) ("Where there is a good faith basis for objecting to removal, however, the regulatory goals *do not outweigh* the Petitioners' significant interest."); *Zgombic v. Farquharson*, 89 F.Supp.2d 220, 235 n. 15 (D.Conn.2000) ("Zgombic's liberty interest is considerably heightened because she can pursue section 212(c) relief, and is therefore potentially entitled to remain in United States indefinitely.").

deprivation where the alien has conceded either his removability or the facts underlying his order of removal. *Parra,* 172 F.3d at 958 ("[T]he probability of error is zero when the alien *concedes* all elements that require removal."); *Yanez v. Holder,* 149 F.Supp.2d 485, 493 (N.D.Ill.2001); *Marogi,* 126 F.Supp.2d at 1066; *Avramenkov,* 99 F.Supp.2d at 216 ("[T]he risk of erroneous deprivation is slight in light of the Petitioner's aggravated felony conviction and the fact that he does not dispute this conviction. Consequently, additional procedural safeguards would be of little value to a criminal alien, such as the Petitioner here, whose removal from the country is a virtual certainty."); *Reyes,* 73 F.Supp.2d at 658; *Galvez v. Lewis,* 56 F.Supp.2d 637, 648 (E.D.Va.1999). Thus, the weight of this second element frequently follows from the strength of the private interest.

The final element, the government's interest in avoiding bond considerations in order to protect the public from criminal aliens and to prevent those aliens from absconding after removal proceedings begin, is unquestionably weighty. Even the cases finding § 1226(c) unconstitutional have conceded this. *See, e.g., Perez,* 2001 WL 1042133, at *7; *Zgombic,* 89 F.Supp.2d at 236; *Kim,* 1999 U.S.Dist.LEXIS 12511, at *29. This third element, however, also addresses the fiscal and administrative burdens faced by the government in achieving these interests. In other words, while the interest may be great, if additional procedures that substantially promote both the private and governmental interests would pose a minimal burden to the government, then the governmental interest at stake is minimized. *Perez,* 2001 WL 1042133, at * 7, *Danesh,* 2001 WL 558233, at *7; *Kim,* 1999 U.S.Dist.LEXIS 12511, at *28–29. Courts finding the private interest signifi-

cant have found that additional safeguards, in the form of bond hearings, would impose minimal burdens on the government and would substantially reduce the risk of detaining aliens who are not a threat to public safety or who are not a threat to flee. *Id.* Courts finding little private interest at stake find even this limited cost to be unduly burdensome.

After reviewing these cases and the reasoning behind them, the Court declines to decide whether § 1226(c) is unconstitutional on its face because the Court finds that, even if the interest at stake is defined more narrowly, § 1226(c) is unconstitutional *as applied in this case.*

### D. Shurney's Liberty Interest

██ If Shurney is as an aggravated felon under immigration law, he is prohibited from seeking cancellation of removal under 8 U.S.C. § 1229b(a). As noted above, under that section, an alien who has been a lawful permanent resident for five years, has resided continuously in the United States for the last seven years, and has not been convicted of an aggravated felony can petition the Attorney General for cancellation of removal. Though Shurney satisfies the first two requirements, if he is appropriately characterized as an aggravated felon, that status would prevent him from seeking such a cancellation. Absent the benefits of § 1229b(a), Shurney has no chance (barring a legislative change) of resisting removal and remaining in this country.

Both parties concede that Shurney's status as an aggravated felon depends on the combination of his two drug possession convictions. Without the first conviction, Shurney would not be an aggravated felon for immigration purposes. Shurney currently is seeking to vacate his 1995 minor misdemeanor marijuana conviction.[7] He

---

7. Shurney filed a motion for post-conviction

relief seeking to withdraw his guilty plea in

contends, citing *Lujan–Armendariz v. INS*, 222 F.3d 728 (9th Cir.2000), that if that conviction is vacated under state law, it would be deemed non-existent under the immigration law and again allow resort to § 1229b(a).

In *Lujan–Armendariz*, the Ninth Circuit held that individuals whose state offenses would qualify for treatment under the Federal First Offender Act ("FFOA") if they had been brought federally, and whose convictions are expunged under state laws, are not considered to have been "convicted" for immigration purposes. *Id.* at 732. The FFOA applies to individuals with no prior state or federal controlled substances violations who have been found guilty of simple possession under 18 U.S.C. § 844.[8] 18 U.S.C. § 3607. Convictions expunged under the FFOA "shall not be considered a conviction . . . for any other purpose." 18 U.S.C. § 3607(b). The Ninth Circuit held, on equal protection grounds, that "persons who received the benefit of a state expungement law were *not* subject to deportation as long as they *could* have received the benefit of the federal Act if they had been prosecuted under federal law." *Lujan–Armendariz*, 222 F.3d at 738; citing *Garberding v. INS*, 30 F.3d 1187 (9th Cir.1994); *see also Matter of Manrique*, 1995 WL 314732, 1995 BIA LEXIS 14, Int. Dec. 3250 (BIA 1995). In *Lujan–Armendariz*, the Ninth Circuit concluded that the subsequent passage of 8 U.S.C. § 1101(a)(48)(A), which defines the term "conviction" for immigration purposes, by Congress did not repeal this interpretation of the FFOA. While the *Lujan–Armendariz* decision has not been followed in every Circuit, *see Fernandez–Bernal v. Attorney Gen.*, 257 F.3d 1304 (11th Cir.2001); *Herrera–Inirio v. INS*, 208 F.3d 299 (1st Cir.2000); *Nwandu v. Crocetti*, 8 Fed.Appx. 162, 2001 WL 401484 (4th Cir.2001), the Sixth Circuit has yet to consider the issue.

Although the Immigration Judge found that Shurney was an aggravated felon within the meaning of § 1101(a)(43)(B), Shurney has appealed that determination to the Board of Immigration Appeals, asking that the Board follow *Lujan–Armendariz*. The question before this Court is not whether *Lujan–Armendariz* should be adopted in this Circuit; the question presented in this proceeding is whether, in light of *Lujan–Armendariz*, Shurney has a good faith basis to contest his removal and, hence, has a protectable liberty interest in objecting to detention pending removal. Since the Sixth Circuit has yet to rule on Shurney's contention and another Circuit Court has ruled in a manner favorable to Shurney, this Court cannot conclude that Shurney's argument is frivolous.

Since the Court concludes that Shurney has at least a good faith basis for arguing that he is entitled to petition the Attorney General under 8 U.S.C. § 1229b(a) to remain in the country, the Court also concludes that Shurney's situation is distinguishable from that in *Parra*. In this case, Shurney has not conceded his removal or the underlying convictions upon which it is based, and Shurney's protesta-

---

the Lakewood Municipal Court pursuant to Ohio Criminal Rule 32.1. Shurney contends that the Municipal Court failed to give him the advisement required by Ohio Rev.Code § 2943.031(D) and that his plea was not knowingly and voluntarily given. A hearing on that motion is scheduled for December.

8. Respondents suggest in their brief that the FFOA only applies to minors, and therefore is inapplicable because Shurney was nineteen years old when he was convicted in 1995. The Court finds no such limitation in the language of 18 U.S.C. § 3607. In fact, the language contained in subsection (c) indicates that the FFOA applies to individuals of all ages.

tions are tenable and not merely hollow. Shurney also has been in the country for twenty-three years and is married. Under these circumstances, the Court finds that Shurney has a significant private interest in remaining free from indefinite and potentially long-term detention during the pendency of his removal proceedings.

Having concluded that Shurney's private interest is substantial, the Court also finds that the risk of and erroneous deprivation of that interest is high given that no procedures exist to make an individualized determination of whether Shurney presents a safety risk to the public or a risk of disappearing before his removal proceedings are complete. Further, the Court finds that an individualized bond hearing would have great value in assessing these risks.

Finally, the Court, while acknowledging that the Government has a strong interest in protecting the public and making sure that aliens appear for their removal proceedings, finds that Shurney's private interest must outweigh the Government's. In particular, the Court finds that the burdens imposed by holding a bond hearing are minimal, especially in comparison to magnitude of Shurney's private interest. Thus, the Court finds that it can satisfy both Shurney's and the Government's substantial interests by requiring a bond hearing. Of course, to the extent such a hearing reveals factors which would justify denial of bond in Shurney's particular case, the government retains the right to do so.

Accordingly, the Court finds that Shurney has a due process right to be free from detention without an individualized hearing. The Court finds 8 U.S.C. § 1226(c) unconstitutional as applied to Shurney because the statute violates his procedural due process rights as guaranteed by the Fifth Amendment to the United States Constitution.

## IV. Conclusion

For the reasons set forth above, Respondent's Motion to Dismiss (docket number 7) is **DENIED** and Petitioner's Emergency Petition for Writ of Habeas Corpus (docket number 1) is **CONDITIONALLY GRANTED.** The government shall afford Shurney a bond hearing before an immigration judge within ten (10) days of the date of this order. The immigration judge shall state clearly, on the record, the basis of an individualized determination whether any condition or combination of conditions of release will reasonably ensure that Shurney will not flee and that he will not endanger the public. Because the Court's order awards Shurney the relief he seeks in its entirety, the case is hereby **DISMISSED.**

**IT IS SO ORDERED.**